682

Hillsborough
No. 82-579

THE STATE OF NEW HAMPSHIRE

v.

ELDON SIDEBOTHAM

April 9, 1984

683

*Gregory H. Smith*, attorney general (*Donald J. Perrault*, assistant attorney general, on the brief, and *Edna M. Conway*, attorney, orally), for the State.

*Emile R. Bussiere P.A.*, of Manchester (*Richard J. Walsh* on the brief and orally), for the defendant.

KING, C.J. This is an interlocutory transfer without ruling from the Superior Court (*Souter*, J.) of two questions relating to the suppression of evidence. At issue are the validity of a warrantless inspection of a motor vehicle for its confidential vehicle identification number, when made by a title investigator pursuant to RSA 262:11, and the standing of the owner of such vehicle to challenge the use of evidence obtained from said examination.

The facts from which this case arose are as follows: On December 4, 1980, Gerald O. Gosselin of the Title Bureau of the New Hampshire Division of Motor Vehicles and Trooper Ted Reynolds of the New Hampshire State Police went to the Manchester Speed Shop, an automotive repair shop located in Manchester. They were acting upon information received by Trooper Reynolds, from an unidentified informant, that a stolen 1973 Lincoln Continental automobile could be found at the shop. Trooper Reynolds and Mr. Gosselin, upon entering the shop, observed a Lincoln Continental. They identified themselves by name and occupation to the owner/operator of the shop, Leo Cloutier, informed him of their suspicions and requested his permission to "check out" the car. Mr. Cloutier did not object.

Mr. Gosselin first inspected the public vehicle identification number (PVIN) attached to the dashboard of the Lincoln, by peering through the windshield. He noted the number which was 3Y89A832673. He further noted that of the six to eight screws holding the dashboard to the car, one or two were missing and the paint on the heads of several others was scratched. An examination of the PVIN itself, however, revealed no marks or signs of tampering.

Gosselin next proceeded to the driver's door to check a secondary location of the PVIN, which is generally attached to a mylar sticker. Observing the frame of the door, which was open at that time because a mechanic was working on the car, he noted that the PVIN

had been scratched off. Gosselin and the mechanic thereupon entered the car through the open door, removed six to eight screws, and lifted off the dashboard, thereby revealing a confidential vehicle identification number (CVIN), which was stamped on the steering column. This number, which was 3Y89A821790, did not match the PVIN previously observed on the dashboard. Checking with the National Auto Theft Bureau by telephone, Gosselin discovered that the CVIN belonged to a Lincoln automobile reported stolen on May 9, 1979, from the New England Glass Company of Worcester, Massachusetts.

Based upon the facts uncovered by Gosselin and furnished to the police, a search warrant for the Manchester Speed Shop was issued that same day by the Manchester District Court. Upon executing the warrant, the police seized the stolen 1973 Lincoln Continental along with various other related items. The defendant, who had approximately three weeks earlier had the car delivered by a local towing service to the shop, was arrested and charged with receiving stolen property (RSA 637:7) and possession of a motor vehicle with knowledge that an identification number of that vehicle had been removed with the intent to conceal its identity (RSA 260:7-b) (currently codified at RSA 262:8).

Prior to his trial on these charges, the defendant filed a motion to suppress all evidence seized by the police on December 4, 1980, at the Manchester Speed Shop, including: "the dashboard to a 1973 Lincoln automobile, VIN 3Y89A832673; a 1973 Lincoln Continental automobile, VIN 3Y89A821790; any contents or papers taken from the aforesaid Lincoln Continental automobile; two (2) New Hampshire registration motor vehicle plates, No. 467106; any and all photographs taken by Sgt. Edward Garland of the Manchester Police Department of the above items at any time."

The defendant contends that the evidence was seized illegally, improperly, and in direct contravention of the provisions of the fourth amendment of the United States Constitution and part I, article 19 of the New Hampshire Constitution. The State, however, maintains that the warrantless inspection conducted by Mr. Gosselin, which uncovered the facts giving rise to the issuance of a search warrant for the Manchester Speed Shop, constituted a valid administrative search conducted under the provisions of RSA 262:11.

Prior to ruling on the defendant's motion to suppress, the superior court transferred two questions to this court for resolution. We will first address the standing issue presented to this court in Question I:

"I. Does the owner of a motor vehicle left at a repair shop for repairs have standing to object to an examination

of his motor vehicle for the CVIN by a Title Investigator pursuant to RSA 262:11 (formerly RSA 269-A:20-b), and without objection from the shop's owner?"

A preliminary inquiry which any court must make before it will consider a motion to suppress evidence based upon an unreasonable search or seizure is whether the individual filing the motion has standing. Standing confers upon an individual the right to challenge unreasonable government conduct. *State v. Ruelke*, 116 N.H. 692, 693, 366 A.2d 497, 498 (1976); *see United States v. Thomann*, 609 F.2d 560, 563 (1st Cir. 1979).

The State contends that the defendant, who left his motor vehicle at a repair shop for repairs, lacked the legitimate or reasonable "expectation of privacy" in the vehicle necessary to confer upon him standing to challenge an alleged search of the vehicle conducted in violation of his State and federal constitutional rights. *See United States v. Salvucci*, 448 U.S. 83 (1980); *Rakas v. Illinois*, 439 U.S. 128 (1978). The defendant, however, maintains that the New Hampshire Constitution affords to him "automatic standing" to challenge the legality of the examination of his motor vehicle for its CVIN. He contends that part I, article 19 of the State Constitution affords to him "automatic standing" based upon the fact that he has been charged with two offenses in which possession of the vehicle is an element.

This court has consistently recognized that in a given situation "[o]ur [State] constitution often will afford greater protection against the action of the State than does the Federal constitution." *State v. Settle*, 122 N.H. 214, 217, 447 A.2d 1284, 1285 (1982); *see, e.g., State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 497 (1979); *State v. Hogg*, 118 N.H. 262, 264, 385 A.2d 844, 845 (1978). The provisions of our State Constitution may be interpreted so as to independently furnish a basis for protecting personal rights even when it is clear that the guarantees of the Federal Constitution do not grant that same level of protection. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 350 (1983).

Part I, article 19 of the New Hampshire Constitution states:

"[Searches and Seizures Regulated.] Every subject hath a right to be secure from *all* unreasonable searches and seizures of his person, his houses, his papers, and *all his possessions*. Therefore, all warrants to search suspected places . . . are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation . . . and no warrant ought to be issued; but in cases, and with the formalities, prescribed by law."

(Emphasis added.) We are convinced that the language of our State Constitution requires that "automatic standing" be afforded to all persons within the State who are charged with crimes in which possession of an article or thing is an element. *State v. Settle*, 122 N.H. at 218, 447 A.2d at 1286.

■■ Article 19 prohibits *all* unreasonable searches and seizures of *all* a citizen's possessions. *Id.* In order to assert this constitutional right, a citizen must be given standing to challenge any search or seizure of his possessions. The right to be secure from *all* unreasonable searches and seizures of *all* one's possessions without a concurrent right to challenge the legality of any search or seizure is meaningless. Responding to the question posed by the superior court, we conclude, therefore, that a defendant, who has been charged, as in the instant case, with an offense arising out of his possession of a motor vehicle, must be afforded "automatic standing" under the provisions of our State Constitution to challenge the legality of any search of that motor vehicle, even if the alleged search was conducted by a title investigator while the vehicle was located at a repair shop.

■ Afforded this additional protection under our State Constitution, a defendant need not establish, as required for standing under the Federal Constitution, an "expectation of privacy" in the vehicle. A review of recent cases decided under the "legitimate expectation of privacy" doctrine "shows us that its administration is not without problems." *State v. Settle*, 122 N.H. at 219, 447 A.2d at 1287. This doctrine simply "introduces into the law enforcement and judicial process yet another flexible threshold determination to be made for the orderly and fair disposition of criminal cases." *Id.* "The protection of constitutional rights and effective law enforcement will be better aided by [our adoption of "automatic standing"—] a simpler, less fact-specific test." *Id.* at 220, 447 A.2d at 1287.

Based upon our resolution of the standing issue presented in Question I, we will address the second issue posed by the superior court:

> "II. In light of *Marshall v. Barlows*, 436 U.S. 307 (1978), does RSA 262:11 (formerly RSA 269-A:20-b) validly authorize a warrantless search of a motor vehicle for the CVIN by a Title Investigator, when not made in accordance with any routine inspection procedure, and in fact made because of suspicion that the vehicle is stolen?"

■ RSA 262:11 grants to title investigators the authority "to examine any vehicle on the premises of any new or used car dealer, at any body shop, auction, salvage yard, or any shop where vehicles

are repaired or restored for the purpose of checking vehicle identification numbers. . . ." In *State v. McGann*, 124 N.H. 101, 104, 467 A.2d 571, 573 (1983), this court held that, under our State Constitution, the official inspection of a vehicle identification number which is not in plain view and which is located within a vehicle constitutes a search.

 The CVIN inspected by Mr. Gosselin, in the instant case, was not in plain view. In order to examine the number, which was stamped on the steering column of the suspect vehicle, Gosselin and a mechanic had to first remove the vehicle's dashboard, which effectively hid the number from public view. Consequently, the official inspection of the defendant's CVIN, as conducted by Gosselin in this instance, constituted a search subject to the "reasonableness" provisions of our State Constitution. *See* N.H. CONST. pt. I, art. 19.

The defendant, in the instant case, challenges both the constitutionality of RSA 262:11 on its face and also the manner in which it was employed in his case to justify a warrantless search of his motor vehicle. Based upon the facts as presented, however, we need not address either the constitutionality of RSA 262:11 on its face or the validity of the powers which it confers upon title investigators in general to conduct independent, warrantless, administrative searches to determine compliance with motor vehicle title provisions. Rather, we need only focus upon the purpose for the examination and the manner in which the statute is being employed in this instance to justify a warrantless search.

Trooper Ted Reynolds of the New Hampshire State Police received a "tip" from an unidentified informant that a stolen vehicle could be found at the Manchester Speed Shop. Acting upon this "tip," Trooper Reynolds proceeded to the shop without a warrant but accompanied by Mr. Gosselin, a title investigator for the New Hampshire Division of Motor Vehicles. After identifying themselves to the owner of the shop, Gosselin proceeded to conduct a warrantless "administrative" search of the suspect vehicle, allegedly based upon authority conferred upon him by RSA 262:11. As a result of this search, Gosselin uncovered sufficient evidence to establish the probable cause necessary for Trooper Reynolds to obtain a warrant later that day to search the Speed Shop, a warrant which authorized a search and seizure of property which ultimately culminated in the defendant's arrest.

 We find that the search conducted by Gosselin at the Manchester Speed Shop was in substance a search brought about and orchestrated by the State police, but cast in the form of an administrative search conducted under the authority of RSA 262:11, in

order to enable the police to avoid the warrant requirements of our State Constitution. *See State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980) ("warrantless search is *per se* unreasonable and invalid, unless it comes within one of a few recognized exceptions"). Gosselin conducted his search of the defendant's vehicle based upon a "tip" supplied by the police, while accompanied by a police officer and for the apparent purpose of aiding the police in their investigation of an alleged criminal offense—possession of stolen property.

■ RSA 262:11 does not confer any power upon the State police to conduct warrantless searches of motor vehicles for their vehicle identification numbers. Rather, the legislature, in enacting RSA 262:11, bestowed such power exclusively upon the director of the division of motor vehicles and his agents in order to enable these individuals to more efficiently and effectively "perform their jobs." N.H.H.R. JOUR. 534 (1977); *cf. Manchester Press Club v. Commission*, 89 N.H. 442, 445–46, 200 A. 407, 409–10 (1938) (regulatory power conferred upon liquor commission by statute to conduct frequent inspections to enforce its control of liquor traffic does not include power to assist other law enforcement agencies by placing instruments in their hands to aid such enforcement).

The police will not be permitted to circumvent the warrant requirements imposed upon them by our State Constitution simply by teaming up with or by employing the services of title investigators to conduct limited searches for them, searches which they themselves cannot legally conduct and searches by which they acquire those facts necessary to establish probable cause to justify the issuance of a search warrant. "The violation of a constitutional right by a subterfuge cannot be justified, and the circumstances of this case leave no other inference than that this is what was done ...." *Corngold v. United States*, 367 F.2d 1, 5 (9th Cir. 1966) (quoting *Taglavore v. United States*, 291 F.2d 262, 266 (9th Cir. 1961)).

■ The State police, in this instance, will not be permitted to justify the warrantless search conducted by Title Investigator Gosselin, which supplied the basis for their subsequently obtained search warrant, as a valid administrative search conducted independently by a title investigator pursuant to the provisions of RSA 262:11. Based upon our resolution of the defendant's rights under our State Constitution, we need not address his rights under the Federal Constitution. *See State v. Ball*, 124 N.H. 226, 237, 471 A.2d 347, 354 (1983). We remand this case to the superior court for further proceedings in accordance with this opinion.

*Remanded.*

Souter, J., did not sit; Brock, J., dissented; the others concurred.

Brock, J., dissenting: I disagree with the conclusion of the majority that the language of part I, article 19 of the New Hampshire Constitution "requires that 'automatic standing' be afforded to all persons within the State who are charged with crimes in which possession of an article or thing is an element." I remain convinced that the proper test to be employed when determining whether a particular defendant has standing to challenge the validity of a search and/or seizure under our constitution is: "does the conduct which the defendant challenges involve an intrusion into his legitimate expectations of privacy with reference to the items seized and the place searched, thus violating *his* constitutional rights?" *State v. Settle*, 122 N.H. 214, 222, 447 A.2d 1284, 1289 (1982) (Brock, J., dissenting).

The inquiry into what is a legitimate expectation of privacy involves two questions. *Smith v. Maryland*, 442 U.S. 735, 740 (1978). "The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy' . . . . The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable."'" *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

Because the record in this interlocutory appeal provides an insufficient basis for determining whether the defendant had a reasonable expectation of privacy, I would remand for further proceedings.