**UNITED STATES of America, Appellee,**

v.

**Debbie L. and Gary GIVENS,
Appellants.**

**No. 83–5069.**

United States Court of Appeals,
Fourth Circuit.

Submitted Jan. 16, 1984.

Decided May 2, 1984.

Rudolph L. Di Trapano, Rebecca A. Baitty, Di Trapano & Jackson, Charleston, W.Va., on brief, for appellants.

David A. Faber, U.S. Atty., Michael E. Winck, Asst. U.S. Atty., Charleston, W.Va., on brief, for appellee.

Before RUSSELL and ERVIN, Circuit Judges, and ROSENN, Senior Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

PER CURIAM:

We confront in this case the issue of whether defendants Debbie and Gary Givens have a legitimate expectation of privacy in the contents of a package addressed not to them but another party, sufficient to permit them to challenge the search and seizure of that package as violative of the Fourth Amendment.

On March 29, 1982 William G. Dancy sent a package from Miami, Florida to Charleston, West Virginia on Piedmont Airlines, Flight 314. The package in question was a padded mailing envelope, securely sealed, containing an opaque video tape cassette. Hidden within the cassette, accessible only by removing screws holding together the sides of the cassette, were two ounces of cocaine. The mailing envelope was addressed to "Midwest Corporation, Union Building, Charleston, West Virginia; Att: Debbie Starkes, [sic]" and was pre-printed with the name and address of a division of Midwest Corporation in Miami, Florida as sender.

Debbie and Gary Givens had purchased cocaine from Dancy on two previous occasions, with Debbie Starks acting as intermediary each time. The March 29 shipment was also intended for the Givens.

Defendants had, in each of the previous transactions, paid Dancy for the cocaine either directly or through Starks after receiving their purchases.

As prearranged, Debbie and Gary Givens attempted to pick up the package upon its arrival on March 29 at the Kanawha Airport, Kanawha County, West Virginia. Piedmont employees told them that it had been delayed and would arrive the next day on another flight at around 4:00 p.m. Unknown to the defendants, the Kanawha County Sheriff's Department had, according to the government, received information from a confidential informant that a shipment of drugs would be arriving in Charleston on Piedmont Flight 314 out of Miami, Florida at about 10:00 p.m. on March 29, in a package addressed either to Midwest Corporation in care of Debbie Starks, or to Debbie Starks singularly. Acting on the tip, Sergeant L.G. Dodson went to the airport and, upon being informed by Piedmont personnel that a package fitting the informant's description had arrived, Dodson arranged for the false delay to be reported. Dodson returned the next morning at 10:45 a.m. with other police and a "sniff dog," which confirmed the presence of drugs in the package. The police then contacted the president of Midwest Corporation, Sam Silverstein, who stated that he had authority to open any mail addressed to the company. Silverstein returned to the airport with police and opened the envelope and cassette, revealing the cocaine. Meanwhile, Gary Givens had unsuccessfully attempted to pick up the package on the morning of March 30 and was informed that it had not yet arrived. At about 4:25 p.m. on March 30, Debbie Givens signed for and picked up the package containing the cocaine, after it had been in police custody some 18 hours. She was arrested on her way out of the airport.

Debbie and Gary Givens, along with Dancy and Starks, were indicted for various federal drug offenses, based on this cocaine transaction and other acts. Dancy and Starks entered into plea agreements with the government. The Givens moved prior to trial to suppress all evidence

against them derived from the March 29–30 seizure and search. The District Court ruled that they had no legitimate expectation of privacy in the contents of the package, and were therefore precluded from challenging the search. Subsequently, the Givens entered into a stipulation of certain facts with the government, admitting that with the fruits of the search the government would be able to establish their guilt on all but two charges, which the government moved to dismiss. Defendants waived their right to trial by jury and consented to trial by the court based on the stipulated facts, reserving their objection to the court's consideration of any evidence derived from the March 29–30 seizure and search. The District Court, based upon the stipulation and its previous suppression ruling, found Debbie Givens guilty of one count of conspiring to distribute cocaine, 21 U.S.C. § 846, one count of possession of cocaine, 21 U.S.C. § 844(a), two counts of distributing or aiding and abetting in the distribution of cocaine, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count of possessing with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). Gary Givens the court found guilty of one count of conspiring to distribute cocaine, 21 U.S.C. § 846, and two counts of possessing with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). Both defendants appeal solely on the question of whether the District Court erred in ruling that they could not challenge the legality of the seizure and search.[1]

It is firmly established that Fourth Amendment rights are personal and may not be vicariously asserted, *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–25, 58 L.Ed.2d 387 (1978), and that the exclusionary rule's benefits run only to those whose Fourth Amendment rights have been violated. *Id.* at 134, 99 S.Ct. at 425. To claim the protection of the Fourth Amendment, a defendant must have "a legitimate expectation of privacy in the invaded place." *Id.* at 143, 99 S.Ct. at 430. Property rights, while not determinative of an expectation of privacy, remain conceptually relevant to whether one's expectations are "legitimate" or "reasonable." *Id.* at 143–44 n. 12, 99 S.Ct. at 430–31 n. 12. Defendants bear the burden of demonstrating that they had a legitimate expectation of privacy in the contents of the package. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *United States v. Bellina,* 665 F.2d 1335, 1340 (4th Cir.1981).

Sealed packages are, of course, entitled to Fourth Amendment protection against warrantless searches and seizures, just as any other private area. *United States v. Van Leeuwen,* 397 U.S. 249, 251, 90 S.Ct. 1029, 1031, 25 L.Ed.2d 282 (1970); *Ex parte Jackson,* 96 U.S. 727, 733, 24 L.Ed. 877 (1878). It is no doubt true that, had this package been addressed to the defendants, they would have had a legitimate expectation of privacy in its contents.[2] But that is not the situation. Defendants here are claiming a privacy interest in the contents of a package addressed neither to them nor to some entity, real or fictitious, which is their *alter ego,* but to actual third parties, Midwest Corporation and Debbie Starks. To overcome this obstacle, they argue that a privacy interest arises from their status as intended recipients of the cocaine concealed in the package, and from the significant precautions taken to preserve the secrecy of the package's contents.

---

**1.** Although the government now urges us to find that certain of the defendants' convictions rest on evidence independent of that acquired through the March 29–30 seizure and search, and are therefore not subject to challenge on this appeal, we assume without deciding that all of defendants' convictions depend on the admissibility of the cocaine found in the search.

**2.** While there is authority for the proposition that even a package addressed to a fictitious entity created by defendants may furnish a basis for a legitimate expectation of privacy, *see Walter v. United States,* 447 U.S. 649, 654, 100 S.Ct. 2395, 2400, 65 L.Ed.2d 410 (1980) (opinion of Stevens, J.); *United States v. Richards,* 638 F.2d 765, 770 (5th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981), that issue is not before us here and we express no opinion on it.

■ As to the former argument, defendants cite no direct authority for the proposition that when A sends a package to B, the contents of which are ultimately intended for C, that C is entitled to claim a privacy interest in the contents of the package. Nor do we think this argument is tenable on its merits. Even assuming that defendants had some possessory interest in the cocaine, for which they had apparently not yet paid, that interest did not broaden to encompass the mailing envelope and cassette. This situation is analogous to claims that one has a legitimate expectation of privacy in the trunk of another's car, *see Rakas,* 439 U.S. at 148–49, 99 S.Ct. at 432–33, or in another's purse, *Rawlings,* 448 U.S. at 104–06, 100 S.Ct. at 2561–62. In all these circumstances the owner of the container controls the use of and access to the area as a depository for the property of others; as the Supreme Court noted in *Rakas,* the right to exclude others affords a significant indicator of whether one has a legitimate expectation of privacy in an area. *See* 439 U.S. at 144 n. 12, 99 S.Ct. at 430 n. 12. Defendants here effectively relinquished control over the area in which the drugs they claim an interest in were secreted. Once police had arranged for the opening of the mailing envelope and cassette, it was as though the cocaine had been found in plain view. *See United States v. Lisk,* 522 F.2d 228, 230 (7th Cir. 1975), *cert. denied,* 423 U.S. 1078, 96 S.Ct. 865, 47 L.Ed.2d 89 (1976). And as *Rawlings* makes clear, 448 U.S. at 106, 100 S.Ct. at 2562, a defendant can claim no legitimate expectation of privacy in drugs found in plain view, regardless of whether he has any ownership interest in the contraband. Thus, defendants' argument that the search and seizure of the package are constitutionally distinct merely confuses the issue. The search and seizure of the package are under these facts constitutionally equivalent, since defendants had no legitimate expectation of privacy therein. As the Supreme Court has recently noted, the same general principles apply to both seizures and subsequent searches of containers. *United States v. Place,* ── U.S. ──, ──, 103 S.Ct. 2637, 2640, 77 L.Ed.2d 110, 116 (1983).

■ Since defendants' status as intended recipients of the cocaine conferred upon them no legitimate expectation of privacy in the contents of a package addressed to another, the extent of precautions taken to conceal the illicit drugs becomes irrelevant. The incriminating appearance of contraband and risk of exposure may be pertinent considerations in determining whether there exists a reasonable expectation of privacy in a package sent by a carrier, as in *United States v. Barry,* 673 F.2d 912, 919 (6th Cir.), *cert. denied,* 459 U.S. 927, 103 S.Ct. 238, 74 L.Ed.2d 188 (1982), but only where at least a colorable claim of such an expectation is offered, as by a sender or addressee. Where the privacy interest asserted has no merit, as here, it matters not whether the package is of the flimsiest sort, or as impregnable as Fort Knox.

In declining to recognize any legitimate expectation of privacy in the contents of a package addressed not to defendants but to another party, we observe that defendants' theory lacks any principled stopping point. Were any privacy interest to be accorded beyond the clearly defined limits we set, privacy claims might be advanced all along a chain of drug distribution, like ripples in a pond, becoming more and more remote from the point at which drugs are intercepted. As Justice Powell has stated, "the public has a compelling interest in identifying by all lawful means those who traffic in illicit drugs for personal profit." *Florida v. Royer,* 460 U.S. 491, ──, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229, 243 (1983) (Powell, J., concurring). *See also Place,* ── U.S. ──, ──, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110, 118 (1983); *United States v. Mendenhall,* 446 U.S. 544, 561, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980) (opinion of Powell, J.). Since many drugs are easily concealed, the obstacles of detection of illegal conduct are enormous. *See Mendenhall,* 446 U.S. at 562, 100 S.Ct. at 1881 (opinion of Powell, J.). The Supreme Court has been reluctant to expand Fourth

Amendment substantive protections, well aware that "[e]ach time the exclusionary rule is applied it exacts a substantial social cost for the vindication of Fourth Amendment rights. Relevant and reliable evidence is kept from the trier of fact and the search for truth at trial is deflected." *Rakas*, 439 U.S. at 137, 99 S.Ct. at 427. We adhere to this sound guidance.

Accordingly, we dispense with oral argument, as the facts and legal arguments are adequately presented in the briefs and the decisional process would not be significantly aided, and affirm the judgment of the District Court.

AFFIRMED.