Hillsborough
No. 91-410

## THE STATE OF NEW HAMPSHIRE

v.

## MATTHEW ALOSA

April 7, 1993

34

*John P. Arnold,* attorney general (*Brian R. Graf,* assistant attorney general, on the brief and orally), for the State.

*Kenna, Johnston, Craighead & Sharkey P.A.,* of Manchester (*Rodkey Craighead, Jr.* on the brief and orally), for the defendant.

THAYER, J.   The defendant was convicted by a jury in superior court of conspiracy to possess marijuana with the intent to distribute, RSA 318-B:26 (1984); RSA 629:3 (1986), and being an accomplice to the possession of marijuana with the intent to distribute, RSA 318-B:26; RSA 626:8 (1986). The defendant appeals the Superior Court's (*Dalianis,* J.) denial of his motion to suppress evidence seized by a Federal Express official. The superior court found that the defendant lacked standing. We affirm.

In February 1990, the Nashua Police Department learned that the home address of Janet Foss might be used to facilitate a crime. Detective Conley contacted Foss on February 27, requesting further information and her cooperation. Foss indicated that the defendant had called her and offered to pay her $200 per week if he could use her address. Later, Foss informed the detective that the defendant had contacted her again, telling her she was going to receive a package from California at her address, addressed to her, and delivered by Federal Express. Foss explained that she believed that the package would contain some sort of contraband, possibly a hallucinogen,

and that the defendant had insisted on Foss being at her residence to take delivery and possession of the package.

On March 1, 1990, Detective Conley called the senior manager of the Federal Express office in Manchester. Detective Conley explained that there was a possibility that a package containing an illegal substance would be shipped by Federal Express to the Foss residence. Detective Conley asked the manager to follow the company policies if such a package were found. The manager then checked to see which courier would be delivering the package, determined that such a package existed, and instructed the courier to return it to the Manchester office. The manager opened it in accordance with the provisions of the airbill, an agreement that the sender must sign before Federal Express will ship a parcel, allowing Federal Express to inspect the parcel for any reason. Upon inspection of the package, the manager found three bundles of what she believed to be marijuana. The manager immediately called Federal Express security and Detective Conley at the Nashua Police Department to report her discovery. Federal Express security authorized the manager to turn the package over to the Nashua police. After the Nashua police had taken custody of the package, they arranged for its controlled delivery to the Foss residence. In accordance with a plan made by the defendant and Michael Purdie, the codefendant, Purdie arrived to pick up the package of marijuana from Foss after the delivery took place. The police arrested him, and soon thereafter arrested the defendant.

The defendant filed a pretrial motion to suppress, arguing that the police had seized the marijuana without a warrant. After a pretrial hearing, the superior court denied the defendant's motion, ruling that the defendant lacked standing to contest the seizure of the marijuana.

On appeal, we are asked to determine whether the defendant has standing to challenge the legality of a warrantless seizure of a package containing marijuana pursuant to both the automatic standing doctrine under part I, article 19 of the New Hampshire Constitution, and also as required by the expectation of privacy doctrine under the fourth amendment to the United States Constitution.

The defendant maintains that the State Constitution affords him "automatic standing" because he has been charged with crimes that are predicated upon proof of possession as the underlying offense. The State, however, contends that the defendant's possession of marijuana was not an essential element of conspiracy or accomplice liability. *See State v. Settle*, 122 N.H. 214, 218, 447 A.2d 1284, 1286

(1982); *State v. Sidebotham*, 124 N.H. 682, 687, 474 A.2d 1377, 1379 (1984). Therefore, the State argues, the automatic standing rule cannot apply.

The United States Supreme Court created the automatic standing rule in *Jones v. United States*, 362 U.S. 257 (1960), holding that an individual automatically has standing to assert his fourth amendment right to challenge an allegedly illegal search when the same possession needed to establish standing is an essential element of the offense charged. *Id.* at 263. The Court reasoned that denying the defendant standing could place him in the predicament of establishing possession in order to claim standing while having that same testimony used against him at trial. *Id.* at 261–62. The United States Supreme Court, however, overruled *Jones* and laid the automatic standing rule to rest in *United States v. Salvucci*, 448 U.S. 83 (1980). The reason for requiring automatic standing no longer existed after *Simmons v. United States*, 390 U.S. 377, 394 (1968), a case in which the Court held that testimony supporting a motion to suppress could no longer be used against the defendant on the issue of the defendant's guilt. Federal jurisprudence now requires that defendants charged with possessory crimes establish that their own fourth amendment rights have been violated by the contested search and seizure by showing that they had a legitimate expectation of privacy in the place searched or item seized. *Salvucci*, 448 U.S. at 91–92; *Rakas v. Illinois*, 439 U.S. 128, 148 (1978).

This court adopted the automatic standing doctrine in *State v. Crump*, 107 N.H. 62, 217 A.2d 183 (1966), following the United States Supreme Court's decision in *Jones*. After *Salvucci*, however, this court espoused a limited automatic standing rule, rather than the federal expectation of privacy test. *See State v. Settle*, 122 N.H. at 218, 447 A.2d at 1286–87. In *Settle*, the court reasoned that "[t]he protection of constitutional rights and effective law enforcement will be better aided by a simpler, less fact specific test." *Id.* at 220, 447 A.2d at 1287. The majority of the court adopted a limited automatic standing rule due to the possibility that suppression hearing testimony could be used to impeach the defendant at trial and also on the premise that "for the benefit of law enforcement, the trial courts, and the trial bar—that class of persons who may assert their rights against unlawful searches and seizures should be clearly defined." *Id.* at 219, 447 A.2d at 1287. Accordingly, we have held that our constitution requires that automatic standing be afforded to all persons charged with crimes in which their possession of any item or thing is an element. *Id.* at 218, 447 A.2d at 1286; *see State v. Paige*, 136 N.H.

208, 612 A.2d 1331, 1332 (1992) (no standing conferred because defendant lacked possessory interest at time of contested search); *State v. Steer*, 128 N.H. 490, 493, 517 A.2d 797, 800 (1986) (defendant lacked standing where possession was not element of crime); *Sidebotham*, 124 N.H. at 687, 474 A.2d at 1379 (defendant had standing since crime charged required his possession).

The defendant argues that *Settle* requires this court to hold that he was entitled to automatic standing since the *Settle* case also involved a conspiracy charge. We are not persuaded by the defendant's argument, however, and further decline his invitation to extend the automatic standing rule in the manner he suggests. The charges against the defendants in *Settle* required proof that the defendants themselves had been in possession of the stolen property. *Settle*, 122 N.H. at 218, 447 A.2d at 1286. The defendant in the present case, however, was charged with crimes involving another's possession of marijuana, namely, Michael Purdie's possession. Because possession by the defendant is simply not an element of either of the charges against him, the New Hampshire Constitution does not require that we afford him automatic standing. The parties have not argued that we adopt a reasonable expectation of privacy test to analyze State constitutional claims. Therefore, with respect to the defendant's claim of standing under part I, article 19, we decline to consider whether to confer standing under a reasonable expectation of privacy concept.

The defendant also argues that he has standing under the fourth amendment to the United States Constitution, relying on the "legitimate expectation of privacy" analysis enunciated in *Mancusi v. DeForte*, 392 U.S. 364 (1968): whether the conduct which the defendant challenges as unlawful involved an intrusion into his reasonable expectation of privacy. *See Rakas v. Illinois*, 439 U.S. 128. The burden is on the defendant to demonstrate that he had a legitimate expectation of privacy in the place searched or the item seized. *United States v. Bouffard*, 917 F.2d 673, 675 (1st Cir. 1990) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)); *see Rakas*, 439 U.S. at 147. To meet this burden, the defendant must satisfy two criteria: he must have had a subjective expectation that the evidence would remain private, and his expectation must have been one that society would deem reasonable or legitimate. *State v. Valenzuela*, 130 N.H. 175, 181, 536 A.2d 1252, 1257 (1987) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)), *cert. denied*, 485 U.S. 1008 (1988). Certain factors that have been considered pertinent to

this analysis include ownership, possession, control, ability to regulate access to the evidence, historical use of the item seized, and the totality of the surrounding circumstances. *United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir. 1991); *United States v. Melucci*, 888 F.2d 200, 202 (1st Cir. 1989).

■ The defendant contends that he is entitled to standing since the government was seeking evidence to be used against him at trial when the police organized the controlled delivery to the Foss residence. This "target theory," however, was expressly rejected in *Rakas* in which the United States Supreme Court refused to extend fourth amendment protection to anyone who may be a target of a search or seizure. *Rakas*, 439 U.S. at 135. The Court stated that this "type of standing requirement . . . is more properly subsumed under substantive Fourth Amendment doctrine," focusing on the defendant's expectation of privacy. *Id.* at 139. Accordingly, we reject the defendant's argument.

■ The United States Supreme Court, however, has recognized as legitimate a person's privacy rights in a sealed package sent through the United States mails. *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970). If the package had been addressed to or sent by the defendant through the mail, he might have had a legitimate expectation of privacy in its contents. In the present case, the defendant claims a privacy interest in a package addressed neither to the defendant himself nor to an alter ego, but to an actual third party, Bill Foss, in care of Janet Foss. The defendant argues that he had a property interest in the package, which gives rise to a constitutionally protected privacy interest. The record, however, reveals that the package was not sent by the defendant, but by a Texas company. The sender signed the airbill allowing Federal Express to inspect the package at any time. Even if the defendant orchestrated the whole arrangement, this fact is not sufficient to overcome the litany of negatives militating against a finding of standing. For instance, there is no evidence in the record that the defendant ever possessed the package, no evidence that he sent it or was the only person who would receive it, and no evidence that he was present when the package was seized or delivered to Foss. Moreover, the record reveals that the package had to pass through many hands before reaching the defendant, thereby negating any argument that the defendant had sole access to the package.

■ The defendant argues that his status as intended recipient of the marijuana in the package gives rise to a privacy interest. He

claims this status since he contacted Foss, arranged for her to receive the package, and gave her express instructions regarding what she should do when taking delivery of the package. The defendant's alleged status as an intended recipient, however, is simply not sufficient to confer upon him a legitimate expectation of privacy in the contents of a package sent through an independent carrier and addressed to someone other than himself. *See United States v. Givens*, 733 F.2d 339, 341 (4th Cir. 1984) (defendant claiming he was "intended recipient" had no privacy interest in package that was addressed to actual third party). Any subjective expectation of privacy that the defendant might have held is diluted by the fact that the airbill was signed prior to shipment. The defendant as self-proclaimed orchestrator of the situation is presumed to have knowledge of the consent-to-inspect term of the signed airbill.

█ The defendant further contends that his efforts to maintain the secrecy of the package evidence his expectation of privacy in the package, which is entitled to federal constitutional protection. The defense counsel in *Givens* attempted the same argument, and we agree with that court's conclusion: "Since [the] defendant['s] status as intended recipient[ ] of the [drugs] conferred upon [him] no legitimate expectation of privacy in the contents of a package addressed to another, the extent of precautions taken to conceal the illicit drugs becomes irrelevant." *Id.* at 342.

█ It is clear from the record before us that the defendant's only interest in the package containing marijuana is avoidance of its "evidentiary force against him" at trial. *See United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988). The defendant has failed to articulate any reasonable basis for an alleged privacy interest in the package. Without a privacy interest, the defendant lacks standing to assert fourth amendment protection. While every defendant has a similar interest regarding every piece of evidence that the State adduces, such an interest is simply not protected under the fourth amendment. *See id.*

The defendant's lack of standing renders discussion of his third argument—that the superior court erred in determining that the seizure of the package was a private seizure and not subject to constitutional protections—unnecessary. Thus, we affirm the superior court's denial of the defendant's motion to suppress.

*Affirmed.*

All concurred.