Hillsborough-southern judicial district
Nos. 97-319
    97-717

THE STATE OF NEW HAMPSHIRE

v.

GERALDO GONZALEZ

July 2, 1999

*Philip T. McLaughlin*, attorney general (*Jane E. Young*, assistant attorney general, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief and orally, for the defendant.

*Geraldo Gonzalez*, by brief, *pro se*.

BRODERICK, J. The defendant, Geraldo Gonzalez, appeals his convictions on one count of possession of marijuana with intent to sell, RSA 318-B:2 (1995), and one count of conspiracy to possess marijuana with intent to sell, RSA 318-B:2; RSA 629:3 (1996). He argues that the Superior Court (*Hampsey*, J.) erroneously denied his motion to suppress evidence and his motion for new trial. We affirm.

I

On July 18, 1996, the Nashua Police Department received, from the resident manager of Clovelly Apartments in Nashua, information about a suspicious package. The manager informed the police that the United Parcel Service (UPS) attempted to deliver a package addressed to "Denise Brown," and that no one by that name lived there. He told the police that shortly after UPS retrieved the package at his request, a man he believed to be "Gerry Gonzalez" inquired if UPS had made a delivery that day. He reported that approximately ten similar packages had been sent previously to the address of the defendant's girlfriend, Jennifer Bedell. Many were addressed to individuals he believed to be fictitious, and often "Gerry Gonzalez" took possession of them.

Following the manager's call, the police contacted UPS and secured the package. After examining its label, the police placed the package with four other parcels, and a police canine trained to detect the presence of illicit substances indicated to its handler that the suspect package might contain drugs. The police obtained a warrant to search the package and discovered approximately twenty pounds of marijuana.

While the police had possession of the package, UPS received a phone call from a woman identifying herself as "Rachel Brown," the addressor listed on the package, requesting its redelivery on July 19 to apartment 9-6, Bedell's apartment. The police then obtained an anticipatory warrant to search Bedell's apartment upon the package's redelivery.

On July 19, UPS delivered the package to apartment 9-6 and it was signed for and accepted. Soon thereafter, the defendant and

another man arrived at the apartment. Approximately ten minutes later, Bedell answered a knock at her door. The police entered, searched the apartment, and arrested the three individuals. They seized numerous items, including a paper bag containing approximately twenty pounds of marijuana that was seen in the defendant's possession when the police entered the apartment.

The defendant was charged with possession of a controlled drug with intent to sell and conspiracy to possess a controlled drug with intent to sell. Prior to trial, asserting automatic standing, the defendant moved unsuccessfully to suppress the introduction of the marijuana, among other items. At the suppression hearing, counsel elected to present no evidence, but offered only legal argument.

Following a jury trial, the defendant was convicted on both counts. His motion for new trial was denied. This appeal followed.

## II

The defendant argues that the anticipatory search warrant was unlawfully issued and that the marijuana seized must be suppressed because: (1) the canine sniff of the package, upon which the warrant was partially predicated, was a warrantless search without justification; (2) the warrant failed to satisfy the requirements of an anticipatory warrant; and (3) the remaining observations about "suspicious" activity outlined in the warrant application's supporting affidavit were inadequate to establish probable cause.

## A

We need not decide whether the canine sniff on July 18 constituted a search, *see State v. Pellicci*, 133 N.H. 523, 580 A.2d 710 (1990) (plurality opinion), or whether it violated the defendant's constitutional rights because we conclude that the defendant lacked standing under the State and Federal Constitutions to challenge it. We address the State constitutional claim first. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983).

Part I, Article 19 of the New Hampshire Constitution "requires that automatic standing be afforded to all persons charged with crimes in which their possession of any item or thing is an element." *State v. Alosa*, 137 N.H. 33, 36, 623 A.2d 218, 221 (1993). This doctrine affords a defendant automatic standing to contest a search and seizure when charged with a crime in which possession of the seized evidence is an element of the offense. *See State v. Sidebotham*, 124 N.H. 682, 687, 474 A.2d 1377, 1379-80 (1984). "[A] basic premise of the rule is that the individual have a

possessory interest in the article or thing to be searched or seized."
*State v. Paige*, 136 N.H. 208, 210, 612 A.2d 1331, 1332 (1992). Absent
any possessory interest in the marijuana prior to, or at the time of,
the canine sniff on July 18, the defendant will not be afforded
automatic standing to challenge that search. *See id.* at 211, 612 A.2d
at 1332. The defendant failed to demonstrate such a possessory
interest.

The defendant initially argues that his possessory interest in the
package is demonstrated by his attempt to take possession of it on
July 18 when he asked the resident manager whether UPS had made
a delivery. There is no indication in the suppression record, however,
that the defendant specifically inquired about the suspect package.

The defendant also asserts a possessory interest from the fact
that "an anonymous caller contact[ed] UPS and requested that the
package be redelivered to [the] residence [he and Bedell shared]."
The mere fact that *someone* at apartment 9-6 may have been
expecting a package, however, does not create a possessory interest
in the *defendant*.

The defendant further contends that he had a possessory interest
in the package because he was its actual intended recipient. The
package, however, was addressed to "Denise Brown," and the record
does not establish that this was an alias or alter ego for the
defendant. Moreover, there is nothing in the suppression record
indicating that the defendant claimed to be the intended recipient of
the package. While the trial transcript may establish such a claim,
the defendant does not contend that he renewed his motion to
suppress at trial, and therefore we limit our review to the suppres-
sion record upon which the trial court based its decision. *Cf. State v.
Sterndale*, 139 N.H. 445, 448, 656 A.2d 409, 411 (1995); *State v.
Jaroma*, 137 N.H. 143, 148, 625 A.2d 1049, 1052 (1993).

The defendant also argues that his possessory interest is estab-
lished by his actions on July 19. Specifically, he contends that upon
receipt of the package, he treated its contents as his own by opening
it and placing the marijuana into a shopping bag, which he retained.
The defendant's possession of the bag, however, on July 19 does not
demonstrate a possessory interest in the package or its contents on
July 18.

Finally, the defendant contends that all relevant parties treated
him as having a possessory interest in the package. The defendant
cannot, however, rely on Bedell's conduct in paging him when the
package arrived and refraining from opening it because this evi-
dence, even if sufficient, was not offered at the suppression hearing.
The fact that the manager contacted the police based on prior

package deliveries to the defendant, and that the police did not execute the second warrant until the defendant arrived at Bedell's apartment, are not sufficient, given the paucity of the other evidence, to invest the defendant with a possessory interest in the package.

■ We disagree with the defendant that the totality of the surrounding circumstances invests him with a possessory interest in the marijuana on July 18. We conclude, therefore, that the defendant lacked automatic standing to challenge the July 18 canine sniff under Part I, Article 19 of the New Hampshire Constitution. Because the defendant only asserts automatic standing, we do not address whether the New Hampshire Constitution would sanction standing on some other basis, such as a reasonable expectation of privacy. *See Alosa*, 137 N.H. at 37, 623 A.2d at 221.

The defendant next argues that he has standing under the Fourth Amendment of the United States Constitution to challenge the canine sniff on the basis of a legitimate expectation of privacy. This standard requires defendants to demonstrate their legitimate expectation of privacy in the place searched or the item seized. *United States v. Salvucci*, 448 U.S. 83, 91-92 (1980). In order to prove an expectation of privacy, the defendant must establish that (1) he had a subjective expectation that the contents of the package would remain private, and (2) his expectation is one that society would deem reasonable or legitimate. *See Alosa*, 137 N.H. at 37, 623 A.2d at 221.

Here, the defendant claims a privacy interest in the package due to his alleged status as the addressee. *See id.* at 38, 623 A.2d at 222. He contends that no one contested that "Denise Brown" was his alter ego or that he was the actual intended recipient of the package. A review of the suppression record, however, reveals, at most, that the fictitious nature of the name "Denise Brown" was undisputed. This, however, does not support the defendant's contention that "Denise Brown" was *his* alias or alter ego. *Cf. United States v. Richards*, 638 F.2d 765, 770 (5th Cir. 1981) (defendant had standing to challenge search of sealed package where evidence demonstrated that addressee was, in effect, the defendant). In fact, in his suppression motion, the defendant stated:

> There is no evidence that the package was addressed to a fictitious person, but only to a person not a regular tenant of the building. There is no evidence to suggest that the addressee was not a friend or relative of some tenant at the building.

Therefore, the defendant apparently took the position that "Denise Brown" may have been an actual person, perhaps a friend or relative of a tenant, not his alias or alter ego.

In addition, there is no evidence in the suppression record supporting the defendant's status as the actual intended recipient. Even assuming that he was the intended recipient of the marijuana, there is no indication in the suppression record that the defendant had the ability to regulate access to the package itself. *See United States v. Givens*, 733 F.2d 339, 342 (4th Cir. 1984). Moreover, actual intended recipient status "is simply not sufficient to confer upon him a legitimate expectation of privacy in the contents of a package sent through an independent carrier and addressed to someone other than himself." *Alosa*, 137 N.H. at 39, 623 A.2d at 222.

The defendant points to other circumstances to demonstrate his legitimate expectation of privacy in the package, but we remain unconvinced. First, he points to all of the circumstances he raised to demonstrate automatic standing under the State Constitution. His factual characterizations, however, either lack support in the suppression record or are insufficient to establish a legitimate expectation of privacy in the package. Second, he contends that neither he nor the sender waived their rights to privacy in the package. Absent a legitimate expectation of privacy in the place searched or property seized, however, waiver is irrelevant. Third, the defendant asserts that he had an expectation of privacy concomitant with Bedell because their shared apartment was the intended place of delivery. The defendant, however, cites no legal authority for the proposition that all residents in a household have a legitimate expectation of privacy in the contents of a package which does not identify any of them as the sender or recipient. Therefore, we reject that argument.

Fourth, the defendant asserts that his attempt to locate the package on July 18 and orchestration of its delivery demonstrates his reasonable expectation of privacy. We fail to discern how the defendant's attempt to locate a package bearing the name "Denise Brown" as addressee and "Rachel Brown" as sender establishes his privacy interest in the package when no evidence was offered to suggest that either name was his alias or alter ego. "[T]here is no evidence in the [suppression] record that the defendant ever possessed the package [prior to or on July 18], [or] evidence that he sent it or was the only person who would receive it . . . . " *Id.* at 38, 623 A.2d at 222 (applying federal law).

▆ Finally, the defendant points to evidence offered at trial that the marijuana was packaged in a manner to avoid detection,

including many layers of packing materials and an odor of Pine Sol. As a practical matter, while this evidence may indicate that someone has a reasonable expectation of privacy in the package, it does not demonstrate that the defendant does. Moreover, even if the manner of packaging were relevant, *but see Givens*, 733 F.2d at 342, the defendant cannot rely on it on appeal because such evidence does not appear in the suppression record. Thus, the trial court did not have the opportunity to consider it. Accordingly, the trial court properly concluded that the defendant lacked standing to challenge any search of the package under the Federal Constitution.

B

We reject the defendant's argument that the second warrant failed to satisfy the strict prerequisites for the issuance of an anticipatory warrant, and that the police failed to adhere to its executing limitations in violation of Part I, Article 19 of the New Hampshire Constitution and the Fourth Amendment of the United States Constitution. We address the State constitutional claim first. *See Ball*, 124 N.H. at 231, 471 A.2d at 350. Because the Federal Constitution is not more favorable to the defendant than the State Constitution in this area, we do not engage in a separate federal analysis. *See State v. Christy*, 138 N.H. 352, 356, 639 A.2d 261, 264 (1994).

"An anticipatory search warrant is a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." *State v. Canelo*, 139 N.H. 376, 380, 653 A.2d 1097, 1101 (1995) (quotation omitted). Such warrants do not violate Part I, Article 19 of the State Constitution. *Id.* at 379-80, 653 A.2d at 1100. An anticipatory warrant involving the controlled delivery of contraband, however, must recite the following specific conditions: (1) the triggering event must be ascertainable and preordained, restricting police "discretion in detecting the occurrence of the event to almost ministerial proportions"; and (2) "the contraband must be on a sure and irreversible course to its destination, and a future search of the destination must be made expressly contingent upon the contraband's arrival there." *Id.* at 382, 653 A.2d at 1101 (quotation omitted). The defendant challenges only the first prong.

He argues that neither the search warrant application nor its supporting affidavit identified a triggering event upon which execution of the warrant would be conditioned. We disagree. The support-

ing affidavit stated that a person identifying herself as "Rachel Brown," the addressor on the package, asked UPS to redeliver it to apartment 9-6 on July 19. It further stated in paragraph IX that

> on 19 July 1996, the suspect package will be delivered to 170 Concord Street, Apartment 9-6, the Clovelly Apartments, Nashua, New Hampshire, and will be left at the door to Apartment 9-6. The suspect package will then be observed to have been brought inside Apartment 9-6 at 170 Concord Street, Clovelly apartments, Nashua, New Hampshire.

The Magistrate (*Gauthier*, J.) issued the warrant "upon the . . . facts in Paragraph IX of the application happening." Thus, it cannot be reasonably disputed that the warrant was expressly conditioned on an ascertainable and preordained triggering event. The defendant contends, however, that the warrant is flawed because the attesting police officer "did not represent to the magistrate that the warrant would not be executed if these conditions precedent failed to occur." This contention is meritless considering the specific statement on the face of the warrant conditioning its execution on the occurrence of the facts stated in Paragraph IX. This condition necessarily incorporates the reasonable inference that should the pertinent events stated in Paragraph IX *not* occur, the police could *not* execute the warrant.

The defendant also asserts that the police failed to comply technically with the triggering event identified in the warrant. In particular, rather than leaving the package at the door of apartment 9-6 and waiting to see if someone opened the door and retrieved the package, the UPS driver knocked on the apartment door, personally delivered the package, and directed the recipient to sign for its receipt. We conclude that such *de minimis* noncompliance with the triggering event is of no consequence. It is clear from the context of the search warrant application, supporting affidavit, and resulting warrant that the necessary triggering event was delivery of the package and acceptance into the apartment. That the event was accomplished by personal delivery rather than door-side delivery raises no constitutional concerns in this case. *Cf. State v. Cannuli*, 143 N.H. 149, 152, 722 A.2d 450, 452 (1998) (evidence supporting probable cause not interpreted in hypertechnical sense). Accordingly, we conclude that the first requirement for an anticipatory search warrant was satisfied.

## C

Finally, the defendant argues that the remaining information in the supporting affidavit failed to establish probable cause necessary to sustain the second warrant. His contention is based on the premise that the July 18 search was unlawful, and therefore the results of the package search, *i.e.*, discovery of twenty pounds of marijuana, could not be used to establish probable cause for the second warrant. We have concluded, however, that the defendant does not have standing to challenge the July 18 search. The defendant does not argue that the results of the July 18 search and the other information, taken together, failed to establish probable cause. Therefore, we need not address his probable cause argument. Accordingly, we hold that the trial court properly denied the defendant's suppression motion on the second search warrant.

## III

The defendant next claims that he is entitled to a new trial because he was denied constitutionally effective counsel under both the State and Federal Constitutions. We turn first to the ineffective assistance claims advanced by his appellate counsel, and then review the ineffective claims asserted in the defendant's *pro se* brief.

■ "[A] criminal defendant is entitled to reasonably competent assistance of counsel." *State v. Henderson*, 141 N.H. 615, 618, 689 A.2d 1336, 1339 (1997). To prevail on a claim of ineffective assistance of counsel,

> the defendant must show deficient performance by trial counsel, in that counsel made such egregious errors that [he or she] failed to function as the counsel that both constitutions guarantee, and that the deficient performance resulted in actual prejudice such that there is a reasonable probability of a different outcome absent counsel's deficient performance.

*State v. Seymour*, 140 N.H. 736, 748, 673 A.2d 786, 795, *cert. denied*, 519 U.S. 853 (1996). That is, "the defendant must show that his trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *State v. Fecteau*, 140 N.H. 498, 500, 667 A.2d 1384, 1386-87 (1995) (quotation omitted).

There is a "strong presumption that counsel's conduct falls within the limits of reasonable practice, bearing in mind the limitless

variety of strategic and tactical decisions that counsel must make."
*Id.* at 500, 667 A.2d at 1387 (quotation and brackets omitted). The
standard for determining whether counsel's performance is consti-
tutionally deficient is identical under both the State and Federal
Constitutions. *See State v. Dewitt*, 143 N.H. 24, 29, 719 A.2d 570, 573
(1998). Therefore, we review the defendant's specific claims of error
under the State Constitution, and need not undertake a separate
federal analysis. *See Henderson*, 141 N.H. at 618, 689 A.2d at 1339.

A

The defendant contends that the representation by his trial
counsel was constitutionally deficient because counsel failed to
object or request an instruction when the court failed to charge the
jury that unanimity was required for the particular "overt act"
underlying the conspiracy charge. His argument, however, is based
on the erroneous assumption that he was *entitled* to such an
instruction. We conclude that the instructions given by the trial
court were sufficient, and, thus, counsel's performance was not
constitutionally flawed.

The crime of conspiracy requires proof of "an overt act . . . com-
mitted by one of the conspirators in furtherance of the conspiracy."
RSA 629:3, I (1996). With respect to this element, the conspiracy
indictment at issue alleged that "at least one" of eight distinct overt
acts was committed by one of the conspirators. Thus, the State
alternatively relied on eight discrete factual predicates to prove the
"overt act" element. *See State v. Greene*, 137 N.H. 126, 129, 623 A.2d
1342, 1344-45 (1993). Even if we assume, without deciding, that jury
unanimity on the particular overt act charged was required to
convict the defendant in this case, *see id.* at 129, 623 A.2d at 1345,
the defendant was not entitled automatically to a specific jury
unanimity instruction as to the factual predicate constituting the
overt act element.

In *Greene*, we held that "[w]here discrete factual predicates
can provide alternative bases for finding an element of the offense
to have been established, a defendant is entitled to jury unanimity
as to the factual predicate supporting a finding of guilt." *Id.* In such
situations, "[o]rdinarily, a general instruction to the jury on the
requirement of a unanimous verdict is sufficient." *Id.* at 130, 623
A.2d at 1345. While "there may be cases in which the nature of the
evidence, questions from the jury, some variance between the proof
and the indictment, or ambiguous supplementary instructions from
the court, may require the court to frame an instruction that

substantial agreement is required on a specific set of facts," *id.* at 130-31, 623 A.2d at 1345 (quotation and brackets omitted), the defendant fails to argue, and we do not find, that any such exceptional circumstances exist in this case. Thus, we cannot say that trial counsel was deficient in failing either to object to the instructions given or to request a particular jury unanimity instruction.

## B

In his *pro se* brief, the defendant argues that his trial counsel was constitutionally ineffective because he failed to object to the introduction of evidence which the defendant argues is prohibited under New Hampshire Rule of Evidence 404(b). In support of the overt act element of the conspiracy charge, the State alleged in the indictment and submitted proof at trial that other packages of marijuana were delivered to Bedell's apartment and later obtained by the defendant. The defendant contends, however, that the State is not permitted to circumvent Rule 404(b) by charging these prior criminal acts in the conspiracy indictment as an element of the offense. Because we conclude that the defendant failed to demonstrate actual prejudice, we need not address his argument. *See State v. Sanchez*, 140 N.H. 162, 166, 663 A.2d 629, 631-32 (1995) (court need not address whether counsel's performance was deficient when defendant fails to demonstrate actual prejudice).

A showing of "actual prejudice to the outcome of the defendant's trial" is essential for a successful ineffective assistance of counsel claim. *Id.* at 163, 663 A.2d at 630. Under the State Constitution, "actual prejudice must rise to such a level that there is a reasonable probability that the result of the proceeding would have been different." *Id.* (quotation and ellipsis omitted). The prejudice prong under the Federal Constitution has been refined "to include a focus on whether counsel's performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* (quotation and ellipsis omitted). We conclude that the defendant failed to demonstrate à reasonable probability that the exclusion of the prior drug deliveries would have resulted in a different verdict. Therefore, we need not address whether the federal test for actual prejudice is meaningfully different. *See id.* at 164, 663 A.2d at 630.

Bedell testified that the defendant caused three packages containing marijuana to be delivered to her apartment, and he subsequently took possession of them. The July 19 package was the last of these deliveries. Even if we assume that the pre-July 19

deliveries constituted improper propensity evidence under New Hampshire Rule of Evidence 404(b), there is no reasonable probability that exclusion of these acts would have resulted in a not guilty verdict. Only two of the eight alternative overt acts alleged in the conspiracy indictment suggest reliance on these prior deliveries as evidence of the conspiracy. The remaining six specifically relate to the July 19 delivery, there was ample unrebutted evidence supporting these acts, and each was legally sufficient to support the guilty verdict. Accordingly, this ineffective assistance claim fails.

## IV

In his *pro se* brief, the defendant also argues that the trial court violated his right to effective assistance of counsel under the State and Federal Constitutions by failing to conduct a status of counsel hearing. We address the State constitutional claim first. *See Ball*, 124 N.H. at 231, 471 A.2d at 350. Because the State and Federal Constitutions provide defendants with equal levels of protection in ineffective assistance claims based on conflict of interest, we need not engage in a separate federal analysis. *Cf. State v. Mountjoy*, 142 N.H. 648, 651, 708 A.2d 682, 684 (1998).

The defendant contends that a letter he sent to the court before trial demonstrates a conflict of interest he had with his trial counsel, thus triggering the court's responsibility to conduct a status of counsel hearing. We disagree.

By letter dated November 12, 1996, the defendant notified the court:

> I, the defendant, do not wish to continue any of my pre-trial hearings or any hearing or trial day already schedule[d].
>
> Unless this court receive[s] a note or an affidavit signed by the defendant, this defendant [does] not give his consent or permission for or to any attorney, for any continuance in this case.
>
> As for my attorney, I already inform[ed] his office that they don't have my consent to ask this Court to continue this case in any-way or form and if he tried to do so I no longer want[ed] him to be my attorney and he [could] return all my records to the Public defend[er's] Office of Nashua, who was or had my case prior to him.

"Note"

I also have a hearing day already schedule[d] for the 25th of November on [the] Motion to Suppress and I do want to keep this day as so schedule[d] by this Court.

I do not want my attorney or ex-attorney . . . to continue this court day or any other day and if he trie[s], *as [of] today 11-12-96* he is no longer my attorney and I did not give him consent to re-schedule my court day or trial day.

Although the record does not indicate that the defense had a motion to continue pending at that time, the clerk of court scheduled a status of counsel hearing for the same day as the November 25, 1996, suppression hearing. Both hearings, however, were continued to December 3, 1996. In its brief, the State alleges that the court ordered the continuance due to a congested court docket, and the defendant does not contend otherwise. Subsequently, defense counsel successfully moved to continue the hearings to December 4 because of a conflict in his schedule. At the suppression hearing, defense counsel informed the court that a status of counsel hearing was not necessary, and no such hearing was conducted. The trial commenced on the scheduled date.

When a trial court becomes aware of a potential or actual conflict of interest relating to defense counsel's representation of a criminal defendant, it must conduct an inquiry on the record to investigate the extent of any conflict. *See Mountjoy*, 142 N.H. at 651, 708 A.2d at 683-84. Such inquiry is prophylactic in nature and is not constitutionally mandated. *See id.* at 650-51, 708 A.2d at 683-84. Therefore, the court's failure to conduct an inquiry does not demand automatic reversal, but requires "this court to address a defendant's claim that he was denied the effective assistance of counsel because of a conflict of interest." *Id.* at 651, 708 A.2d at 684. To obtain relief, the defendant must establish that an actual conflict of interest adversely affected his lawyer's performance, although he need not demonstrate prejudice. *Id.* at 652, 708 A.2d at 684; *see also State v. Cyrs*, 129 N.H. 497, 502, 529 A.2d 947, 950-51 (1987).

We conclude that the November 12 letter did not demonstrate a potential conflict of interest between the defendant and his trial counsel. The letter simply alerted the court that he did not want, nor would he agree to, a continuance of any scheduled hearing or his trial date. The defendant fails to articulate, and we fail to discern, how his complaint about a possible, future request for a continuance by his counsel illustrates counsel's conflicting loyalties that may have adversely affected his performance. *See Cyrs*, 129 N.H. at 502,

529 A.2d at 951. Therefore, the letter itself did not trigger a need for a conflict inquiry. The initial scheduling of a status of counsel hearing, which the trial court found was an error by the clerk of court, does not persuade us otherwise.

The defendant contends that an actual conflict of interest became apparent once his trial counsel requested a continuance of the rescheduled December 3 hearing date. We disagree. Defense counsel notified the court at the December 4 suppression hearing that a status of counsel hearing was not necessary. The defendant does not dispute this; nor does the record indicate that he informed the court at the suppression hearing or on any later occasion that a conflict of interest existed or that he was dissatisfied with counsel's performance. Although a defendant does not always bear the burden of personally raising a conflict with counsel, disagreement regarding minor delays of pretrial hearings does not inherently reveal a potential or actual conflict of interest or deficiency in representation.

The defendant asserts, however, that during the suppression hearing he attempted to address the court personally to object to trial counsel's continued representation, but the court refused to let him speak. The record belies this contention. The context of the exchange does not indicate that the defendant was attempting to express dissatisfaction with counsel. Further, the defendant later demonstrated his proficiency in personally expressing his concerns to the court as illustrated by his *pro se* motion to reconsider the court's suppression order and related dialogue with the court on the first day of trial.

■ Accordingly, we conclude that the trial court did not deny the defendant effective assistance of counsel by failing to conduct a status of counsel hearing.

V

The defendant also argues in his *pro se* brief that the trial court impermissibly amended the indictments by instructing the jury that a prior drug offense was an element of the pending charges. He also complains that the court refused to give the jury a limiting instruction as to the purpose of the prior drug offense, and thus permitted the jury to "impermissibly infer that if the State[] proved that the defendant [had] previously been convicted of a drug offense, they must find him guilty of the present charge." Even assuming that the defendant's arguments are preserved for appellate review, we conclude that they lack merit.

The indictments in this case expressly refer to the defendant's previous Pennsylvania drug conviction, giving him adequate notice that both charges, if proven, constituted subsequent offenses and thus subjected him to enhanced penalties. *See* RSA 318-B:26, I(b)(6) (1995) (amended 1998); :27 (1995). Therefore, the court's instruction to the jury that the prior offense constituted an element of the pending charges did not amend the indictments.

In addition, the trial court did not deny defense counsel's requested limiting instruction. At a bench conference, counsel asked the court "to explain to the jury the purposes [for which] they consider [the Pennsylvania conviction]." The court indicated that its purpose was to serve as evidence of the prior offense element alleged in the indictments. Counsel did not request any other limitation, and the court accordingly instructed the jury that the Pennsylvania conviction was accepted into evidence as part of the State's burden of proving the prior conviction alleged in both indictments. Therefore, we reject the defendant's contention that the court failed to give the requested limiting instruction and permitted the jury to infer that the prior conviction compelled guilty verdicts on the pending charges.

Finally, we have reviewed the remaining arguments in the defendant's *pro se* brief and find them to lack merit, warranting no further discussion. *Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BROCK, C.J., and HORTON, J., did not sit; the others concurred.