UNITED STATES of America, Plaintiff,

v.

**Len A. DiMAGGIO, Henry Lucio, and Franchette L. Williams, Defendants.**

No. 90–CR–125.

United States District Court,
N.D. New York.

Aug. 31, 1990.

Frederick J. Scullin, Jr., U.S. Atty., N.D. N.Y. (Neal P. Rose, Asst. U.S. Atty.), Syracuse, N.Y., for U.S.

William J. Powers, Rome, N.Y., for defendant DiMaggio.

Frank Policelli, Utica, N.Y., for defendant Lucio.

Gustave J. DeTraglia, Jr., Utica, N.Y., for defendant Williams.

## MEMORANDUM–DECISION & ORDER

MUNSON, District Judge.

Defendants are charged in a one count indictment with conspiracy to knowingly and willfully distribute and possess with intent to distribute a controlled substance, namely cocaine, in violation of 21 U.S.C. § 846. Presently before the court are defendants' motions seeking an order granting them standing to challenge the legality of several warrants authorizing the search of various Federal Express packages, allegedly used by defendants for drug trafficking.[1]

### I.  BACKGROUND

The initial investigation of this case was undertaken by the Rome, New York Police Department in February of 1990. Defendants DiMaggio and Lucio were allegedly involved in drug trafficking activity via Federal Express in which every seven to ten days defendants would send packages of money to two individuals in Orlando, Florida, Reggie Aurrichio and Gary Hammond, who would then mail Federal Express packages containing cocaine to defendants in Rome and Utica, New York.[2] It is undisputed that the packages of money claimed to have been sent by defendants were never addressed by name to the two Orlando individuals but rather were mailed to their known residences under fictitious

---

1. Defendants DiMaggio and Lucio reserve the right to make additional motions with regard to severance, discovery, and the admissibility of statements made to law enforcement officials. Defendant Franchette Williams has agreed to put off argument on her additional motions until resolution of the standing question presently before the court.

2. It appears at this time that defendant Williams only alleged connection to this case was that she agreed to sign for and accept delivery of two packages containing cocaine at her residence which was intended for defendant Lucio.

personal or business names. Significantly, defendants' names and addresses never appeared on these packages as the senders. Similarly, the addressees of the packages of cocaine allegedly intended for delivery to defendants in Rome and Utica were fictitious individuals and addressed to locations other than defendants' actual places of residence.[3] Each of the packages involved in the alleged drug trafficking scheme that were ultimately searched contained phone numbers on the outside of the package associated with defendant DiMaggio and with the known or former residence of the Orlando individuals.

Beginning in February of 1990 and continuing through April 25, 1990, the date of defendants arrest, several search warrants were applied for, issued, and executed upon several Federal Express packages. The first warrant was applied for by the Rome Police Department and was issued by Justice Stanley Wolanin of the Town of Whitestown on February 23, 1990. The United States allegedly was not involved in the case at the time. Except for an additional warrant issued by Justice Wolanin on April 24, all subsequent warrant applications were made by agent Robert M. Fritzen of the Central New York Drug Task Force to Magistrate Gustave J. DiBianco and to this court. Each of the federal warrants were issued upon either agent Fritzen's affidavit or his sworn telephone conversations with Magistrate DiBianco and specifically authorized law enforcement officials to do, among other things, the following: (1) search Federal Express packages presented for delivery at the Whitestown, New York Federal Express office addressed to a person or business at the Orlando individuals' known residence; (2) search Federal Express packages sent from Orlando to Rome or Utica bearing the contact number associated with defendant DiMaggio; (3) search and seize any packages or containers within the above Federal Express packages; and (4) search any person who accepts delivery of such packages at the Whitestown office. This court issued the final search and arrest warrants on April 25.

## II. DISCUSSION

The sole question before the court is whether the defendants have standing to challenge the legality of the search of various Federal Express packages allegedly used in the charged drug trafficking scheme. Defendants DiMaggio and Lucio contend that evidence furnished by the government indicates that they exercised dominion and control over the Federal Express packages that were searched and therefore they had a reasonable expectation of privacy as the actual and true sender and recipient of the packages. Accordingly, they assert that they are entitled to challenge the legality of the warrants. Although defendant Williams does not specifically address the question of standing, in advancing substantive arguments challenging the warrants' legality she implicitly assumes such standing.

In response, the United States argues with respect to defendants DiMaggio and Lucio that since the Federal Express packages searched pursuant to the above described warrants did not contain defendants' names or addresses, they did not have a reasonable expectation of privacy in the packages and therefore have no standing to challenge the legality of the issued and executed search warrants. Similarly, the government contends that defendant Williams has no standing to challenge the warrants issued to search packages that were delivered to her residence because she was not the indicated addressee and the packages were neither intended for her nor were they her property.

Although the defendants and the government have framed the question that is before the court as whether defendants have standing to challenge the lawfulness of the search warrants, since the Supreme Court's decision in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the type of analysis which focuses on a defendant's standing to assert Fourth Amendment

---

**3.** Two of the packages were addressed to defendant Williams' place of residence but the addressee was a fictitious person, namely Rose Bruno.

rights as "distinct from the merits of a defendant's Fourth Amendment claim," has been abandoned. *Id.* at 138, 99 S.Ct. at 427. In *Rakas*, the Court held that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Id.* at 139, 99 S.Ct. at 428. Specifically, this analysis involves an inquiry into "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Id.* at 140, 99 S.Ct. at 428; *see also United States v. Paulino*, 850 F.2d 93, 96 (2d Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989) ("Rakas simply translated the standing inquiry into the threshold question of whether a defendant has a cognizable claim.").

In assessing whether the search of the packages in this case infringed upon a protected interest of the defendants, certain settled principles of Fourth Amendment jurisprudence guide this court's analysis. First, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969); *see United States v. Villegas*, 899 F.2d 1324, 1333 (2d Cir.1990). Therefore, defendants possess the burden of demonstrating to the court that their own individual Fourth Amendment rights were illegally impinged by the search of the packages. *See United States v. Paulino*, 850 F.2d at 96. Second, since the "Fourth Amendment protects people and not places," *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967), defendants may assert a Fourth Amendment claim only if they have a legitimate expectation of privacy in the searched packages. *See Rakas v. Illinois*, 439 U.S. at 143, 99 S.Ct. at 430. Third, determining whether defendants possessed such a legitimate expectation of privacy involves a two part inquiry: (1) did the defendants demonstrate a subjective expectation that the contents of the packages would remain free from public intrusion

and (2) are the defendants' subjective expectations of privacy "one[s] that society is prepared to recognize as 'reasonable.' " *Rakas v. Illinois*, 439 U.S. at 143 n. 12, 99 S.Ct. at 430 n. 12 (quoting *Katz v. United States*, 389 U.S. at 361, 88 S.Ct. at 516); *accord Minnesota v. Olson*, — U.S. —, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990); *United States v. Chuang*, 897 F.2d 646, 649 (2d Cir.1990); *United States v. Paulino*, 850 F.2d at 97. With these principles in mind, the court turns to the question of whether the searches involved in this case intruded upon defendants' legitimate expectations of privacy.

Based upon the record presently before the court, there is no genuine question that the defendants did in fact subjectively expect that the contents of the Federal Express packages would remain private. The sworn affidavits and statements of Agent Fritzen demonstrate that defendants must have actually believed that by using names of fictitious senders and addressees and directing the packages to specific locations other than their own places of residence, they would not only effectively conceal their identities but also ensure that the contents of the sealed packages would not be publicly disclosed. Rather than ship the money and cocaine in large quantities in the form of a bulk transfer, the alleged conspirators pursued their drug venture by means of a series of small-scale transactions. The effect of this drug trafficking method was that the conspirators could ship the contraband in ordinary sized Federal Express packages which individually would not arouse suspicion. Of course, by engaging in frequent transfers and placing their respective phone numbers on the packages the conspirators ultimately made it easier for law enforcement officials to discover their identities. Nonetheless, the court concludes that defendants did in fact manifest a subjective expectation that the packages would not be subject to public exposure.

Defendants' subjective expectations, however, are not ones that society would accept as reasonable. It has long been recognized that citizens have a legitimate

expectation of privacy in their own sealed letters and packages and consequently government agents may not conduct a search of such effects without first obtaining a warrant. *See Ex parte Jackson,* 96 U.S. 727, 24 L.Ed. 877 (1878); *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984). Accordingly, the sender and addressee of a piece of mail would have a legitimate expectation of privacy even though they were not in physical possession of the mail while it was en route. 4 W. LaFave, *Search and Seizure,* § 11.3(f) (1987). There is, therefore, no question that if defendants names appeared on any of the packages as the sender or addressee they would have had a legitimate expectation of privacy in the packages and could challenge the legality of the warrants authorizing their search. *See United States v. Givens,* 733 F.2d 339, 341 (4th Cir.1984).

That expectation of privacy vanishes, however, when the identity of the sender and intended recipient is not indicated, as in this case, on the package. With respect to the unidentified sender, it is as if the package had been abandoned since by withholding from society that he is the source, he has effectively repudiated any connection or interest in the item vis-a-vis society, *United States v. Givens,* 733 F.2d at 342, and no longer has the means to exclude others from intruding upon the contents of the package. *See Rakas v. Illinois,* 439 U.S. at 144 n. 12, 99 S.Ct. at 430 n. 12 ("One of the main rights attaching to property is the right to exclude others ... and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude."). Similarly, since the intended recipient has opted to conceal his identity, he can not assert a cognizable Fourth Amendment interest in the package while it is in transit because he has chosen not to announce to society that he has a legitimate claim to the sealed contents of the package. *Cf. United States v. Givens,* 733 F.2d at 342 (holding

that defendants who were not addressees of an envelope containing cocaine did not have a legitimate expectation of privacy in the envelope to permit them to challenge the government search which occurred prior to defendants' receipt of the envelope). Society would not be prepared to recognize such an expectation of privacy as reasonable where the individual has not legitimately manifested to society—in some appropriate manner given the particular context—that he is entitled to such privacy. *Id.*

The packages allegedly used in this case contained nothing on the surface to indicate that defendants had any connection with the packages.[4] Rather, defendants' alleged conduct reflects a conscious desire on their part to avoid public disclosure of their subjective expectations for purposes of violating the law. The Fourth Amendment does not extend its protections to such conduct. *Id.* ("Were any privacy interest to be accorded beyond the clearly defined limit ... set, privacy claims might be advanced all along a chain of drug distribution, like ripples in a pond, becoming more and more remote from the point at which drugs are intercepted.").

Defendants make much of the fact that they exercised dominion and control over the packages as the actual sender and recipient of the packages. The fact that defendants may have paid for the concealed cocaine and thus in a sense may be considered the "owner" of the contents of the packages, however, does not without more establish a legitimate expectation of privacy. *See Rawlings v. Kentucky,* 448 U.S. 98, 105, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) (rejecting defendant's claim that his ownership of drugs found in another's purse permitted him to challenge the search of that purse regardless of his expectation of privacy). The Supreme Court in *Rakas* held that while property law concepts are relevant in determining the extent of an individual's ability to claim Fourth Amendment protection, they are

---

**4.** The fact that many of the packages contained defendant DiMaggio's telephone number would not lead the average person to defendants since

the unsuspecting person would assume that the contact number on the package would be that of the named addressee.

not determinative. 439 U.S. at 143–44 n. 12, 99 S.Ct. at 430 n. 12. Furthermore, "a defendant can claim no legitimate expectation of privacy in drugs found in plain view, regardless of whether he has any ownership interest in the contraband." *United States v. Givens*, 733 F.2d at 342 (citing *Rawlings v. Kentucky*, 448 U.S. at 106, 100 S.Ct. at 2562). Accordingly, defendants' alleged "ownership" interest in the contents of the packages is of no legal significance to the issue presently before the court because once the packages were legitimately opened, "it was as though the cocaine [and money were] in plain view." *Id.*

### III. CONCLUSION

In sum, before the Supreme Court's decision in *Rakas*, defendants probably would have been accorded standing in this case to challenge the search of the packages but would have lost on the merits as they possessed no expectation of privacy with regard to the searched packages. *See Rawlings v. Kentucky*, 448 U.S. at 106, 100 S.Ct. at 2562. "After *Rakas*, the two inquiries merge into one: whether governmental officials violated any legitimate expectation of privacy held by [defendants]." *Id.* Since the court has determined that defendants had no legitimate expectation of privacy in the Federal Express packages searched in this case, they may not challenge the legality of the search of these packages. Defendants' motions are therefore denied.

It is So Ordered.