In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 01-3643 & 01-3644

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAYMOND F. PITTS, a/k/a
LONNIE D. SANDERS, and
ERIK T. ALEXANDER, a/k/a
JOHN EUGENE MILLS, a/k/a
BRUCE BONES,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 00 CR 40004—**Michael M. Mihm,** *Judge.*

ARGUED APRIL 15, 2002—DECIDED MARCH 4, 2003

Before ROVNER, DIANE P. WOOD and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Raymond Pitts and Erik T. Alexander each pleaded guilty to one count of conspiracy to possess with intent to distribute heroin and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B) and 21 U.S.C. § 846. Pitts was sentenced to 324 months' incarceration and eight years of supervised release. The district court sentenced Alexander to 267 months' incarceration and five years of supervised release. Both Pitts

and Alexander reserved their right to appeal the district court's denial of their motions to suppress evidence. We affirm.

## I.

On June 23, 1999, Pitts went to a United States Post Office and mailed a package using Express Mail Service. The package, which contained illegal drugs concealed inside a sealed tuna can, was addressed to James Reed, Jr., 1123 3rd Street, Moline, Illinois, 61265. It listed a return address of James Reed, Sr., 3346 Cypress Street, Sacramento, California, 95838. A postal employee issued a tracking number to Pitts at the time of the mailing. This number was intended to allow the sender to track the status of the package and direct its return to the sender if it could not be delivered for any reason. Pitts called Alexander, the sole resident of 1123 3rd Street in Moline, and told him to expect an Express Mail package addressed to the alias James Reed, Jr. Pitts had previously mailed packages to Alexander using aliases, including the name James Reed. No one named James Reed, Sr. resided at 3346 Cypress Street in Sacramento; the woman who lived there had never heard of James Reed and had no knowledge of a package being mailed using her address. On June 25, Pitts called the Post Office to check the status of the package and was told that it had been delivered to the addressee listed on the parcel.

The package had not been delivered, however, because postal inspectors had intercepted it. In May 1999, postal inspectors in Des Moines, Iowa began investigating three suspicious Express Mail packages mailed to 1123 3rd Street in Moline from Northern California. The parcels matched some of the characteristics of the Post Office's "narcotics package profile." In particular, the pack-

ages were large, person-to-person Express Mail parcels weighing between five and ten pounds, were heavily taped, were sent from known source areas for narcotics, bore fictitious return addresses, and were addressed to different individuals at the same address in Moline. These three packages were ultimately delivered to the 3rd Street address without incident. The manager of the Moline Post Office notified the Des Moines inspector about the fourth package, the one at issue here, when it arrived in Moline on June 25, a Friday. The package fit the narcotics profile in a number of respects: it weighed between five and ten pounds, was heavily taped, and originated from a known drug source area. One of the previously inspected packages had been addressed to James Reed, and the Des Moines inspector asked the Moline manager to fax a copy of the address label to him. Upon comparing that label with the three prior suspicious packages, the inspector determined that all four labels had been written by the same person.

The inspector had previously determined that the only known resident of 1123 3rd Street was "Bruce Bones." Nevertheless, the three prior packages had been received and signed for by a person or persons claiming to be James Ray, Billy Johnson and James Reed, the individuals to whom the packages were respectively addressed. The inspector already knew that the return addresses on two of the prior packages were entirely fictitious. The return address on the third was the same as that used on the fourth package. A dog trained in drug detection had sniffed the third package and had not alerted. This was the state of the investigation when the call came from Moline on June 25. That afternoon, after conducting additional research on the identity of Bruce Bones, the inspector directed the Moline postal manager to forward the package to his Des Moines office. Under Express Mail standards, the package was due to be deliv-

ered to the 3rd Street address in Moline by 3 p.m. that day, but was diverted to Des Moines where it arrived the next morning, a Saturday. Although the inspector paged two local law enforcement agencies that morning to get a drug sniffing canine to inspect the package, neither department returned the inspector's pages over the weekend. The inspector continued the investigation by researching the return address of the fourth package. The inspector spoke to Mildred Willard, the resident of 3346 Cypress Street in Sacramento, who confirmed that she lived at that address with her husband, that she had not mailed any packages to Moline, that no one named James Reed lived at her address and that she had not given anyone permission to use her address for a mailing. The inspector spent the rest of Saturday and Sunday drafting a search warrant affidavit.

On Monday morning, a drug detecting canine sniffed the package but did not alert for the presence of drugs. Later that morning, another inspector from the Des Moines Post Office drove the package back to Moline in order to attempt to obtain consent to search the package. The inspector arrived at 1123 3rd Street before noon, but no one was home. After waiting outside the home until 5 or 6 p.m., the inspector placed a business card in the mailbox and left with the package. Contrary to Post Office policy, the inspector did not place any notice in the mailbox regarding an undelivered Express Mail package. No one called the inspector back and the next day, the inspector obtained a phone number for Bruce Bones and called him. Alexander later admitted that he talked to the inspector and identified himself as Bruce Bones. The inspector identified himself to Alexander as a federal postal inspector and described the package to Alexander. During that conversation, Alexander (using the name Bones) admitted he was the only resident at the address, denied that he was expecting a package, denied

that he had accepted delivery of previous packages, and refused delivery of the package mailed on June 23. The next day, the inspector applied for and received a warrant to search the package. The parcel contained an ounce of crack cocaine sealed inside a tuna can.

Pitts and Alexander were charged with conspiracy to possess with intent to distribute a mixture of heroin and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 21 U.S.C. § 846. Pitts was also charged with possession with intent to distribute a mixture of heroin and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2, as well as possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g), 924(e), and 2. Both Pitts and Alexander moved to suppress the evidence discovered in the package. The district court denied the motion, finding that Pitts and Alexander did not have a reasonable expectation of privacy in the contents of the package because they concealed their identities by using aliases for the mailing. Specifically, the district court found that, although the defendants had a subjective expectation of privacy in the contents of the package, it was not an expectation that society was prepared to recognize as reasonable. The court reasoned that when the identities of both the sender and the recipient are concealed, the expectation of privacy vanishes and the package has effectively been abandoned. Relying largely on *United States v. DiMaggio*, 744 F. Supp. 43 (N.D.N.Y. 1990), and *dicta* in *United States v. Daniel*, 982 F.2d 146, 149 (5th Cir. 1993), the court found as a matter of public policy that society is not prepared to recognize as reasonable an expectation of privacy in the use of an alias as part of a criminal scheme. Anticipating that the defendants would appeal this ruling, the court also found that the length of time the package was diverted and the circumstances of the diversion were not reasonable, and that

if the diversion were the only issue in the suppression, the court would have granted the motion to suppress. Specifically, the court found that the package should have been subjected to inspection by a drug sniffing canine on Friday, and that once the canine did not alert, the Post Office had no reason to continue to hold the package but should have delivered it using policies applicable to Express Mail. Both Pitts and Alexander pled guilty to the conspiracy charge but reserved the right to appeal the district court's denial of their motions to suppress.

## II.

On appeal, Pitts and Alexander question the district court's reliance on *DiMaggio* for a number of reasons. First, they claim that *DiMaggio* conflicts with Fifth Circuit cases holding that persons retain a reasonable expectation of privacy in packages addressed to them under fictitious names. *See United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir. 1992); *United States v. Richards*, 638 F.2d 765, 770 (5th Cir. 1981), *cert. denied*, 454 U.S. 1097 (1981). Second, they maintain that their use of fictitious names in sending and receiving this package cannot be deemed an abandonment where both defendants asserted ownership interests in the contents of the packages in their affidavits in support of their motions to suppress. Finally, they contend that by sending the package via Express Mail, Pitts retained the ability to either recall the package or redirect its delivery at any time during the two-day delivery period guaranteed by the post office. Because of this ability to retrieve or redirect, the defendants maintain that they continued to exert control over the package and cannot be deemed to have abandoned it as a factual matter. Alternately, they argue that the postal inspector's detention of the package

for several days after the contracted delivery date was constitutionally unreasonable under the circumstances. In response, the government maintains that the defendants failed to demonstrate a reasonable expectation of privacy because society is not prepared to accept as reasonable an expectation of privacy in a package when the sender and recipient have used aliases for the purpose of hiding their criminal connection to the package. The government also contends that Alexander's claim to an interest in the package fails as a factual matter because he expressly disavowed ownership when he refused to accept delivery of the parcel. Finally, the government protests the district court's finding that inspectors detained the package for an unreasonable length of time because they diligently pursued their investigation during that time and faced unavoidable delays for reasons beyond their control.

We believe the district court's denial of the defendants' motions to suppress can be affirmed on either of two grounds. First, the search here was conducted pursuant to a lawfully issued warrant, and the defendants have not suggested that (1) the magistrate issuing the warrant wholly abandoned his or her judicial role in the matter, or (2) the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for reckless disregard of the truth, or (3) the warrant was so deficient on its face that the executing officers could not reasonably presume it to be valid. Thus, the evidence was admissible under the good faith exception to the exclusionary rule even if the warrant was issued without probable cause (a conclusion we assume only for the sake of argument). *See United States v. Leon*, 468 U.S. 897, 926 (1984). Second, the defendants in this case abandoned the package at issue and thus lost their right to object to the government's resultant search. We part company with our concurring

colleague because we do not agree that the expectation of privacy in mailing a package using fictitious names for the sender and addressee is not the sort of interest that society is willing to recognize as reasonable.

## A.

Sealed packages sent through the mail are entitled to full protection under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984) ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable"); *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970) (first class mail, such as letters and sealed packages, is protected from inspection except in the manner provided by the Fourth Amendment). The evidence here was seized pursuant to a search warrant, and when a warrant has been issued, suppression is appropriate only in limited circumstances:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Leon*, 468 U.S. at 926.

Pitts and Alexander have not argued that the magistrate abandoned her detached and neutral role in issuing the warrant at issue here. *See United States v. Pless*, 982 F.2d 1118, 1126 (7th Cir. 1992). Nor have they alleged that the postal inspector was dishonest or reckless in preparing the affidavit that supported the warrant. Indeed, they point to no errors in the affidavit at all. The only question that remains is whether a rea-

sonably well-trained officer executing the warrant would have known that the search was illegal despite the magistrate's authorization. *Leon*, 468 U.S. at 922 n.23; *Pless*, 982 F.2d at 1126. At most, Pitts and Alexander allege (and the district court agreed) that the package was detained for an unreasonable amount of time before the warrant was obtained. This would be the only arguable basis for their claim that the officer executing the warrant should have known the search of the package was illegal despite the magistrate's authorization.

The magistrate issuing the warrant was aware of the delay and was apparently untroubled by it. R. 17, Ex. 5. We have previously upheld as reasonable a detention of letters over a weekend for the purpose of subjecting them to a canine sniff test. *United States v. Mayomi*, 873 F.2d 1049, 1054 (7th Cir. 1989). The Supreme Court has emphasized that the significant Fourth Amendment interest is in the privacy of the mail. *Van Leeuwen*, 397 U.S. at 253. Here, as in *Van Leeuwen*, the privacy was not disturbed or invaded until the approval of the magistrate was obtained. *Id*. Although the length of time of the detention of the package is an important factor in determining if the seizure is reasonable, we must also "take into account whether the police diligently pursue[d] their investigation." *United States v. Place*, 462 U.S. 696, 709 (1983). The postal inspector was unable to obtain the services of a trained canine over the weekend despite numerous attempts to contact agencies that had trained canines available. Although the district court was troubled that part of the delay was caused by diverting the package to a different city for investigation, we have previously held that law enforcement authorities are not required to have a canine unit present at every location where a canine inspection is possible or probable. *United States v. Evans*, 282 F.3d 451, 455 (7th Cir. 2002), *cert. denied*, 123 S. Ct. 304 (2002) (citing *United States v. Borys*, 766

F.2d 304, 314 (7th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986)). As soon as the canine failed to alert, a postal inspector personally drove the package back to Moline and attempted delivery. When that effort failed, the inspector obtained a telephone number for the sole resident of the home to which the package was addressed (not a simple task given Alexander's use of multiple aliases), and called to discuss delivery of the parcel. Once Alexander refused delivery, and return to the unknown sender became impossible, the inspector promptly obtained a warrant. Given our prior holdings in similar cases, and given the disagreement over the reasonableness of the length of the detention by the magistrate and the district court judge, we do not believe the officer executing the warrant could be charged with knowing the search was illegal (a proposition we assume only for the sake of argument) even though the magistrate authorized it. Thus, under the principle announced in *Leon*, we affirm the denial of the defendants' motion to suppress the evidence seized from the package.

**B.**

As a factual matter, both Alexander and Pitts abandoned the parcel, and the search may be upheld on that ground as well. Abandoned property is not subject to Fourth Amendment protection. *Abel v. United States*, 362 U.S. 217, 241 (1960); *United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000). A defendant objecting to a search bears the burden of proving a legitimate expectation of privacy in the area searched. *United States v. Ruth*, 65 F.3d 599, 604 (7th Cir. 1995), *cert. denied*, 517 U.S. 1158 (1996). A legitimate expectation of privacy exists when the defendant exhibits a subjective expectation of privacy and the expectation is one that society is prepared to recognize as reasonable. *Ruth*, 65 F.3d at

604. "[N]o person can have a reasonable expectation of privacy in an item that he has abandoned." *Basinski*, 226 F.3d at 836. To demonstrate abandonment, the government must prove by a preponderance of the evidence that the defendant's voluntary words or actions would lead a reasonable person in the searching officer's position to believe that the defendant relinquished his property interests in the item to be searched. *Basinski*, 226 F.3d at 836. This is an objective test and the defendant's subjective desire to later reclaim an item is irrelevant. *Id.* We look solely to the external manifestations of the defendant's intent as judged by a reasonable person possessing the same knowledge available to the government agents involved in the search. *Id.*

Pitts and Alexander both supplied the district court with affidavits claiming a property interest in the parcel. Pitts averred that he mailed the package in question:

> I knew of the parcel's contents and had both a possessory and proprietary interest in said parcel and its contents. . . . I did not abandon my possessory and proprietary interest in said parcel and its contents. To the contrary, I maintained my possessory and proprietary interest in said parcel and its contents by possessing a tracking number for said parcel that was given to me by the United States Post Office employee at the time of mailing that allowed me to track the status of said parcel and to direct its return to me, if, for whatever reason, said parcel was undelivered or was not accepted by its addressee. . . .[B]ased on the foregoing, I believe that I had a reasonable expectation of privacy as to the parcel and its contents[.]

R. 27, ¶¶ 3-6. Alexander merely asserted that he was the sole resident of 1123 3rd Street in Moline, that Pitts called him to inform him that a package was on the way,

that Pitts had previously mailed packages to him using aliases including the aliases used on this occasion, and that the package did not arrive during the time he expected it. R. 35.

The defendants' subjective desire to maintain control of the package is irrelevant, however, in light of the external manifestations of their intent. At the time the warrant was issued, Alexander had expressly disavowed the package. He refused to accept its delivery and he was the only resident of the home to whom the package was addressed. The postal inspectors were obviously not aware of his later-expressed intent to receive the package. A reasonable person in the postal inspector's position would believe that Alexander relinquished his property interests in the parcel. *Basinski*, 226 F.3d at 836. Alexander therefore abandoned the package and his Fourth Amendment claim fails.

The case for Pitts is only a little more difficult. He launched the package into the stream of mail without any legitimate way of retrieving it. Because he sent it via Express Mail and used a false return address, he acknowledges he would have been required to produce a copy of the mailing label and proper identification in the name of the sender in order to retrieve the package. His counsel conceded at oral argument that Pitts did not have proper identification in the name of James Reed, Sr. Because Pitts could not retrieve the package and Alexander refused to accept it, the parcel was abandoned. The defendants do not claim that postal officials were required to destroy the package uninspected if they found it was undeliverable and unreturnable. Because they do not make that argument, that issue may be left for another day. Today we have a case of classic abandonment. We affirm the district court's denial of the motions to suppress on that basis as well.

**C.**

Normally, we would not concern ourselves with a disparity between the holding of a district court sitting in the Second Circuit and the law of the Fifth Circuit. However, because the district court and the concurrence in our case rely on a case from the Northern District of New York, and because the defendants maintain that we risk creating a circuit split if we similarly rely on that case, we will briefly address the defendants' contention that *DiMaggio* conflicts with the law of the Fifth Circuit. The district court relied on *DiMaggio* in finding that the defendants abandoned their interest in the package when they used aliases to conceal their connection to the package. The district court also cited *United States v. Daniel*, 982 F.2d 146, 149 (5th Cir. 1993), for the proposition that a defendant does not have standing to raise a Fourth Amendment objection when the defendant has used an alias to protect himself from identification in the course of a criminal scheme. The court found it counterintuitive and against public policy to recognize a reasonable expectation of privacy in the use of a fictitious name by a person engaged in criminal activity. Tr. at 96-97.

In *DiMaggio*, the court ultimately rested on a theory of abandonment in finding that the defendant's expectation of privacy in a package mailed with false names for both sender and recipient was not an expectation that society would accept as reasonable. Similarly, in *Daniel*, the defendant disavowed the package in question, consistently claiming he was not the addressee. It was the government that claimed the name on the label was an alias for the defendant. The court did no more than raise the question of whether the defendant would have standing to assert a claim given that the use of an alias was part of his criminal scheme. This questioning was *dicta*, however, because the court went on to analyze the claim by assuming that the defendant had a legitimate expecta-

tion of privacy, ultimately finding that a warrant to search the package was properly issued. *Daniel*, 982 F.2d at 149-52. Other cases in the Fifth Circuit clearly hold that individuals have a reasonable expectation of privacy in packages addressed to them under fictitious names even when the false names are used to distance the sender or recipient from the criminal nature of the contents of the package. *See Villarreal*, 963 F.2d at 774; *Richards*, 638 F.2d at 770. Thus, the defendants are correct that *DiMaggio* and the *dicta* in *Daniel* conflict with well-settled law in the Fifth Circuit. Our opinion creates no conflict with the well-settled law of the Fifth Circuit. Because we have affirmed on other grounds, we see no reason to take a position on this issue now except to respond to the concurrence.

## D.

The concurrence acknowledges that there are a number of legitimate reasons that a person might wish to send or receive a package using a *nom de plume*. Some authors and journalists, such as the incomparable Ann Landers, whose real name was Eppie Lederer, employ a pseudonym in their professional life. This is a common and unremarkable practice. In other situations, a celebrity may wish to avoid harassment or intrusion; a government official may have security concerns in using her real name or home address to receive mail; a business executive in merger talks might worry about potential investors misusing the information gained through the mail to manipulate the securities markets. *See United States v. Evans*, 2001 WL 243287, *5 (S.D. Ind. Jan 31, 2001), *aff'd*, 282 F.3d 451 (7th Cir. 2002), *cert. denied*, 123 S. Ct. 304 (2002). Indeed, a sender of mail might wish to remain completely anonymous for any number of reasons. The Supreme Court has held that anonymity of an

author is not a sufficient reason to exclude literary works or political advocacy from the protections of the First Amendment. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-43 (1995). As the Court noted there, an author may decide to remain anonymous for fear of economic or official retaliation, out of concern for social ostracism, or merely because of a desire to preserve as much of one's privacy as possible. *McIntyre*, 514 U.S. at 341-42. So too with the sender or receiver of mail. Yet, because an alias was in this instance used to cloak the identities of the true parties to a narcotics transaction, our colleague concludes that the mailing should have no protection whatever.

There are two possible ways to interpret the concurrence. First, because some people employ an alias and use the mail illegally, everyone with a legitimate reason to remain anonymous should lose their expectation of privacy in the post. Alternatively, only people using an alias for legitimate reasons may retain an expectation of privacy in their mailings while those who employ an alias for illicit purposes may not. Both constructions turn the Fourth Amendment on its head.

The first approach assumes that criminals can forfeit the privacy interests of all persons by using a confidential domain for nefarious ends. Any creative means that a person engaging in illegal activity devises to conceal that fact will lead to the end of privacy for persons engaged in wholly legitimate confidential activities. For example, if persons engaged in illegal drug sales often use hotel rooms for their transactions, or commonly employ cellular telephones to communicate the terms of their deals, then under the concurrence's analysis no one would retain a legitimate expectation of privacy in the use of hotel rooms or cellular telephones.

Under the second approach, only criminals forfeit their Fourth Amendment rights. The illegal contents of the

package serve as an after-the-fact justification for a search. The concurrence concludes that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine sent through the United States mail by a sender using a fictitious name for himself and his addressee. Of course, the government did not know the package contained crack cocaine until it opened and inspected the box. We may not justify the search after the fact, once we know illegal activity was afoot; the legitimate expectation of privacy does not depend on the nature of the defendant's activities, whether innocent or criminal. *United States v. Fields*, 113 F.3d 313, 321 (2d Cir. 1997), *cert. denied*, 522 U.S. 976 (1997). If this were the case, then the police could enter private homes without warrants, and if they find drugs, justify the search by citing the rule that society is not prepared to accept as reasonable an expectation of privacy in crack cocaine kept in private homes. Presumably if no narcotics are found (or, as the concurrence speculates, no pipe bombs are found), the owner of the home would be able to bring a civil lawsuit for nominal damages for the technical violation of privacy rights. The Fourth Amendment requires more than this.

Unlike the theoretical burglar in *Rakas*, who is plying his trade in a summer cabin during the off-season and who is wrongfully present on someone else's property, Pitts and Alexander had a right to use false names in sending and receiving mail.[1] *See Rakas v. Illinois*, 439 U.S.

---

[1] Although there is nothing inherently wrong with the use of a false name in sending and receiving mail, the use of an alias is certainly a relevant factor in the "totality of the circumstances" assessment used to determine whether there is a reasonable suspicion or probable cause to believe that criminal activity is afoot. *See United States v. Ganser*, 315 F.3d 839, 843

(continued...)

128, 143 n.12 (1978). There is nothing inherently wrong with a desire to remain anonymous when sending or receiving a package, and thus the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable. A person using this means of maintaining privacy runs the risk that if the mail is undeliverable, as occurred here, it might become irretrievable. Pitts and Alexander took that risk and ended up losing—indeed, abandoning—control of their property. Having abandoned the package, they surrender their Fourth Amendment claim.

AFFIRMED.

---

[1] (...continued)
(7th Cir. 2003) (in determining whether reasonable suspicion exists, totality of circumstances must be considered); *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (probable cause determined by examining the totality of the circumstances). Thus, although a person generally maintains a reasonable expectation of privacy in mail sent or received using an alias and the use of an alias does not result in an outright loss of Fourth Amendment rights, a law enforcement officer or a court is certainly entitled to consider the use of an alias a relevant factor in deciding whether to detain mail for further investigation or issue a warrant authorizing search of a package. *Evans*, 282 F.3d at 455 (circumstances which appear innocent to an outside observer may suggest criminal activity to experienced law enforcement officers, and they may assess these circumstances in light of their experiences in determining whether reasonable suspicion exists).

EVANS, *Circuit Judge*, concurring.   Although I agree with the majority that Messrs. Pitts and Alexander abandoned the package, and that in any event *United States v. Leon*, 468 U.S. 897 (1984), compels the denial of their motion to suppress, I would prefer, however, to resolve this case on the same basis as Judge Mihm resolved it in the district court. Like him, I would conclude that the defendants lack the type of legitimate expectation of privacy that society is prepared to recognize as reasonable, and thus their motion to suppress should be denied on that basis.

The problem with resting our decision on an abandonment theory is apparent if the facts are tweaked a bit. Assume that instead of disclaiming the package, as he did, Alexander accepted it and told the inspector "Yes, it's my package, but that's not my real name. I just use the name James Reed, Jr. when it suits my purposes." Had he said that, there would be no abandonment, and if that was the only theory to hang one's hat on, his motion to suppress would have to be granted. Which seems, indeed, like a fairly odd result. Why should such an obviously guilty defendant, who uses the United States Postal System to further a criminal enterprise, escape his due? And instead of two guys using phony names to send cocaine through the mail, tweak the facts a bit more and think of two terrorists using phony names to mail a package of pipe bombs, or plans to blow up the Brooklyn Bridge, from one to the other. Under an abandonment theory, had the recipient terrorist said the same thing Alexander said in my first example, the evidence in the package would not be admissible during a trial. And that is an even odder, and deadlier, result. For that reason, I submit it would be better in today's case to ground our decision on a more solid basis and hold that using phony names, while using the postal system of the United States, does not, except in unusual

circumstances not present here, give rise to the sort of personal Fourth Amendment privacy concerns that the Fourth Amendment's exclusionary rule is designed to protect.

Fourth Amendment rights are personal rights which may not be asserted vicariously. *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). As the Court observed, "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Id.* at 131 n.1.

Although both the government and the defendants focus on the question of standing to challenge the search, ever since *Rakas* the type of analysis that centers on standing to assert Fourth Amendment rights as "distinct from the merits of a defendant's Fourth Amendment claim" has been abandoned. *Id.* at 138. In *Rakas*, the Court held that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Id.* at 139. Specifically, this analysis involves an inquiry into "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Id.* at 140.

Going on, the law is fairly well established, at least as far back as *Katz v. United States*, 389 U.S. 347 (1967), that the Fourth Amendment protects people, not places, and one may assert a valid claim under the amendment only if one enjoys a legitimate expectation of privacy in a searched item, like the package here. *Rakas*, at 143. Determining whether defendants possess a legitimate expectation of privacy involves a two-part inquiry: (1) did they demonstrate a subjective expectation that the contents of the package would remain free from public intrusion, and (2) are their subjective expectations of privacy

"one[s] that society is prepared to recognize as 'reasonable.'" *Id.* (quoting *Katz v. United States* at 361).

Our case is just like *United States v. DiMaggio*, 744 F.Supp. 43 (N.D.N.Y. 1990), where a perceptive district judge (Munson) observed that the "expectation of privacy vanishes, however, when the identity of the sender and intended recipient is not indicated . . . on the package." *Id.* at 46. Neither our sender nor our recipient have announced, because they used phony names, that either claims a privacy interest that our society is prepared to recognize as reasonable. While "James Reed, Sr." of Sacramento (as the sender) and "James Reed, Jr." of Moline have a privacy interest, they don't actually exist. So I think it makes good sense to conclude that even though Pitts and Alexander created them, they cannot successfully hide behind them.

But what about people who have legitimate reasons for using a nom de plume, someone like the late Esther Pauline Lederer who, for years, dispensed advice as a syndicated columnist? Could she lose her privacy rights were we to take the route to affirmance I suggest? No. Because Esther Lederer *is* Ann Landers. Just as her twin sister, Pauline Esther Phillips, *is* fellow advice-to-the-lovelorn dispenser Abigail ("Dear Abby") Van Buren. They are their alter egos in a way society recognizes as legitimate. No amount of pushing and shoving, however, can turn Pitts and Alexander into the fictitious "Mr. Reeds" in the same way. The denial of the defendants' motion to suppress, I submit, would be better grounded on the basis I, and Judge Mihm, suggest.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*