STATE OF CONNECTICUT *v.* MARK R. KALPHAT
(SC 17932)

Rogers, C. J., and Norcott, Katz, Palmer and Schaller, Js.

---

Argued October 18, 2007—officially released February 5, 2008

*Norman A. Pattis,* with whom was *Kimberly Coleman,* for the appellant (defendant).

*C. Robert Satti, Jr.,* senior assistant state's attorney, with whom, on the brief, was *Jonathan C. Benedict,* state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Mark R. Kalphat, appeals[1] from the judgment of conviction rendered by the trial court following his conditional plea of nolo contendere, under General Statutes § 54-94a,[2] to charges of possession of one kilogram or more of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), conspiracy to possess marijuana in violation of General Statutes §§ 21a-278 (b), 21a-277, 21a-279 and 53a-48, and his plea of guilty of failure to appear in the first degree in violation of General Statutes § 53a-172 (a). On appeal, the defendant claims that the trial court improperly denied his motion to suppress certain evidence that had been obtained by the police as the result of a warrantless search in violation of his rights under the fourth amendment to the United States constitution[3]

[1] The defendant appealed from the judgment of conviction to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[3] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirma-

and article first, § 7, of the constitution of Connecticut,[4] on the ground that he lacked standing to raise a claim under those constitutional provisions. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On January 20, 2005, Linda Byczko, an employee of ABF Freight System, Inc. (ABF), noticed that several boxes that had arrived at ABF's facility were heavily taped and unusually heavy given that they purportedly contained clothing.[5] Byczko reported the suspicious boxes to ABF's security manager, Bill Downs, who called the Stratford police department to request that it send to the facility a police officer and a police dog trained to detect narcotics. Before the police arrived, Jim Hinds, a supervisor at ABF, cut a hole in one of the boxes, revealing a hard inner box. The opened box smelled of fabric softener, a substance that often is used by drug traffickers to mask the smell of illicit drugs. When the police arrived at ABF's facility, the police dog alerted to the presence of drugs in the partially opened box. The box was then opened completely, revealing marijuana inside.[6]

tion, and particularly describing the place to be searched, and the persons or things to be seized."

[4] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[5] The circumstances surrounding the initial discovery and search of the packages that ultimately were seized as evidence against the defendant are set forth in the defendant's memorandum of law in support of his motion to suppress. That memorandum refers to a police report and a statement by Byczko that were not introduced as evidence at the hearing on the motion to suppress and are not part of the record on appeal.

[6] The record does not reveal who opened the box. The defendant stated in his memorandum of law in support of his motion to suppress that "in the presence of Stratford police officers, the partially opened box was opened completely . . . ." It is reasonable to conclude, that, because it was opened "in the presence" of the police officers, it was not opened by a police officer.

The boxes were addressed to "M. Patterson" at 938 North Main Street in Waterbury. For reasons that are not disclosed in the record, ABF called the defendant to come to the facility and pick up the boxes. The defendant drove his truck to the facility and put one of the unopened boxes into the truck, at which point the police arrested him.

Thereafter, the defendant filed a motion to suppress the evidence seized at the ABF facility on the ground that it had been obtained as the result of a warrantless search in violation of his fourth amendment rights. In support of the motion, the defendant argued that he had a reasonable expectation of privacy in packages delivered by a private freight carrier, that the ABF employees were acting as agents of the state when they opened the box and that, even if the initial opening of the box was a private search that was not subject to the fourth amendment, the police officers were required to obtain a warrant before expanding the scope of the private search by opening the box completely.[7]

At the beginning of the hearing on the motion to suppress, the trial court stated that it would address as a threshold issue whether the defendant had standing to raise a fourth amendment claim in connection with the search. Counsel for the defendant responded that he had not briefed that issue and requested a short recess to review it. The court granted the request. When the hearing resumed, counsel for the defendant called the defendant as a witness. The defendant testified that he had picked up packages at the ABF facility approximately thirty-five times before he was arrested. The defendant did not indicate whether he was the addressee on the packages on those occasions, whether

---

[7] The defendant challenged only the search of the box that ABF partially had opened. He did not raise any fourth amendment claim concerning the box that he put in his truck. The record does not reveal whether or, if so, how, the police determined the contents of that box.

they also had been addressed to "M. Patterson,"[8] or whether they had been addressed to another person or persons. He also did not offer any information about the existence or identity of "M. Patterson" or, if that person existed, about his relationship to the defendant.[9] On cross-examination, the defendant testified that, at the time of his arrest, he occasionally stayed in an apartment above a bar owned by his father at 937 North Main Street in Waterbury. He also testified that he was not "M. Patterson" and that he had not signed for the boxes under that name. On redirect, the defendant testified that each time that he had picked up boxes at the ABF facility, he had presented identification and had signed his own name on the receipts.

In light of this testimony, counsel for the defendant argued that, under *United States* v. *Perea*, 986 F.2d 633 (2d Cir. 1993), the defendant's course of dealing with ABF gave him standing as a bailee to challenge the warrantless search of the box. The state countered that the evidence did not support a finding that the defendant had a reasonable expectation of privacy in any of the boxes addressed to "M. Patterson" because he never had claimed ownership of them, they had not been addressed to him, he had not claimed that he had sent

---

[8] During argument on the motion to suppress, counsel for the defendant stated that the "thirty-five other shipments [were] all addressed to Mike Patterson . . . ." There was no evidentiary basis, however, for that statement.

[9] Defense counsel asked the defendant at the hearing on the motion to suppress whether, when he previously had picked up packages at ABF's facility, he "would take these boxes and hold them for another person." The state objected to the question on the ground that it was leading, and the trial court sustained the objection. The defendant then stated, "I'll take the boxes, yes, in my possession for someone else." When the state pointed out that there had been an objection to the question, the trial court stated, "I'll strike the question." Counsel for the defendant did not pursue this line of questioning, and never inquired about the addressees on the boxes that the defendant previously had picked up at the facility or the identity of "M. Patterson."

them and there was no evidence as to the scope of any bailment. The trial court concluded that, because there was no evidence as to whether the person to whom the boxes had been addressed was a fictitious person, an alter ego for the defendant or a real third person, and because the defendant had disclaimed ownership or knowledge of the contents of the box, the defendant had not met his burden of proving a bailment. Accordingly, the trial court concluded that the defendant lacked standing to raise his fourth amendment claim and denied the motion to suppress.

Thereafter, the defendant entered a plea of nolo contendere to the charges of possession of marijuana with intent to sell and conspiracy on the condition that he have the right to appeal from the trial court's denial of his motion to suppress. After the defendant failed to appear at his sentencing hearing, he was rearrested and charged with failure to appear in the first degree. He pleaded guilty to that charge. The trial court imposed an effective sentence on all of the charges of seventeen years imprisonment, execution suspended after nine years, with three years probation. This appeal followed.

The defendant claims on appeal that the trial court improperly concluded that he had no expectation of privacy under the fourth amendment to the United States constitution[10] in the box that ABF partially had opened and, therefore, he lacked standing to challenge

[10] The defendant has not briefed his claim under article first, § 7, of the constitution of Connecticut separately, but merely has pointed out that the protections afforded by the state constitution may go beyond those provided by the federal constitution. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004).

the alleged warrantless search of the package by the police.[11] We disagree.

"As an initial matter, we note that [o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's [ruling] . . . ." (Internal quotation marks omitted.) *State* v. *Jones*, 281 Conn. 613, 654, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007).

"The touchstone to determining whether a person has standing to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place. . . . Absent such an expectation, the subsequent police action has no constitutional ramifications. . . . In order to meet this rule of standing . . . a two-part subjective/objective test must be satisfied: (1) whether the [person contesting the search] manifested a subjective expectation of privacy with respect to [the invaded premises]; and (2)

---

[11] After the defendant filed this appeal, this court ordered the parties to file supplemental briefs on the following question: "What is the impact of *State* v. *Davis*, 283 Conn. 280 [929 A.2d 278] (2007) on the issue of standing in this case?" In *State* v. *Davis*, supra, 320, this court concluded that it would not adopt as a matter of state constitutional law the automatic standing rule set forth in *Jones* v. *United States*, 362 U.S. 257, 264, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960) (when defendant has been charged with possessory offense, "[t]he possession on the basis of which [the defendant] is to be . . . convicted suffices to give him standing" to challenge legality of search), overruled by *United States* v. *Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980). In his main and supplemental briefs, the defendant did not brief a claim under the state constitution. See footnote 10 of this opinion. Accordingly, we conclude that *Davis* is not implicated in this case.

whether that expectation [is] one that society would consider reasonable. . . . This determination is made on a case-by-case basis. . . . Whether a defendant's actual expectation of privacy . . . is one that society is prepared to recognize as reasonable involves a fact-specific inquiry into all the relevant circumstances. . . . Furthermore, [t]he defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 92–93, 675 A.2d 866 (1996).

In support of his claim that he had a reasonable expectation of privacy in the box that had been shipped through ABF, the defendant relies primarily on *United States* v. *Perea*, supra, 986 F.2d 633. In that case, the defendant claimed that, as a bailee, he had a reasonable expectation of privacy in a duffel bag that another person had placed in the trunk of a taxicab in which he was the sole passenger. Id., 637. The United States District Court determined that "[a]t best, the record suggests that [the defendant] was simply hired to transport the bag from one location to another. Because he does not assert any facts remotely suggesting that he had any expectation of privacy in the contents of the bag, the search did not violate any expectation of privacy that the defendant had in the duffel bag or its contents." (Internal quotation marks omitted.) Id., 638.

On appeal, the United States Court of Appeals for the Second Circuit recognized the proposition that "[l]egitimation of expectations of privacy by law must have a source outside of the [f]ourth [a]mendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others . . . and *one who owns* or *lawfully possesses* or controls property will in all likelihood have a legitimate expectation of

privacy by virtue of this right to exclude." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 640, quoting *Rakas* v. *Illinois*, 439 U.S. 128, 144 n.12, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). The court then stated that "[a] bailee has the right—and often the duty—to exclude others from possession of the property entrusted to him. . . . As to everybody except the true owner of the bailed property, the bailee ha[s] the right of the owner to have and defend its custody and direct possession. . . . And with respect to that property, the bailee, whether gratuitous or for hire, has some duty of care. . . . Further, even if he would not be liable to the bailor, the bailee has a sufficient possessory interest to permit him to recover for the wrongful act of a third party resulting in the loss of, or injury to, the subject of the bailment." (Citations omitted; internal quotation marks omitted.) *United States* v. *Perea*, supra, 986 F.2d 640. Accordingly, the court concluded that "in the [f]ourth [a]mendment context, bailees can have a sufficient interest in bailed property to give them standing to object to its seizure or search." Id. The court also concluded that the evidence supported a finding that the defendant had been a bailee of the duffel bag. Id., 641. The court concluded, therefore, that the defendant had a protectable expectation of privacy in the duffel bag. Id., 642.

In the present case, however, the evidence presented at the suppression hearing clearly supported a finding that the defendant was not in possession or control of the box either when it was partially opened by an ABF employee or when it was opened completely in the presence of the police and, therefore, he was *not* a bailee of the box. See *B. A. Ballou & Co.* v. *Citytrust*, 218 Conn. 749, 753, 591 A.2d 126 (1991) (bailment "involves a delivery of the thing bailed into the *possession* of the bailee, under a contract to return it to the owner according to the terms of the agreement"

[emphasis added; internal quotation marks omitted]). Because the court's conclusion in *Perea* that the defendant had a legitimate expectation of privacy in the duffel bag was based on its determination that it actually was in the defendant's possession and control, *Perea* is inapplicable here.[12]

At oral argument before this court, however, the defendant also argued that a person to whom items are shipped under an alias has a reasonable expectation of privacy in the items before he takes actual possession of them. The case law provides some authority for that claim. See *United States* v. *Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992) (intended recipient of package shipped under alias has reasonable expectation of privacy in package); see also *United States* v. *Pitts*, 322 F.3d 449, 459 (7th Cir.) ("the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable"), cert. denied, 540 U.S. 849, 124 S. Ct. 128, 157 L. Ed. 2d 90 (2003).[13] In *Villarreal*, employees at a transport facility became suspicious after noticing that two fifty-five gal-

---

[12] The defendant also relies on the decision of the Supreme Court of North Dakota in *State* v. *Matthews*, 216 N.W.2d 90 (N.D. 1974), which is factually very similar to the present case. The court concluded in that case that, under the automatic standing rule set forth in *Jones* v. *United States*, 362 U.S. 257, 264, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), the defendant was not required to establish that he had a possessory interest in the seized goods in a pretrial suppression hearing in order to establish standing under the fourth amendment when he was charged with possession of the goods. *State* v. *Matthews*, supra, 98–99. The automatic standing rule was overruled, however, in *United States* v. *Salvucci*, 448 U.S. 83, 95, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980), and, therefore, *Matthews* is no longer good law. See *State* v. *Lind*, 322 N.W.2d 826, 832–33 (N.D. 1982).

[13] But see *United States* v. *Daniel*, 982 F.2d 146, 149 (5th Cir. 1993) (questioning in dicta whether defendant who had used alias on packages shipped to him as part of criminal scheme had reasonable expectation of privacy in packages); *United States* v. *Lewis*, 738 F.2d 916, 919 n.2 (8th Cir. 1984) (stating in dicta that defendant lacked legitimate expectation of privacy in mailbox that he had used under alias), cert. denied, 470 U.S. 1006, 105 S. Ct. 1362, 84 L. Ed. 2d 383 (1985).

lon drums that had been delivered for shipment and were labeled as containing phosphoric acid were too light for their purported contents. *United States* v. *Villarreal*, supra, 772. The shipping order for the drums listed Roland Martin as both the consignor and the consignee. Id. After the employees notified their foreman of their suspicions, he called the United States Customs Service. Id. Two federal agents went to the facility with drug detecting dogs, which alerted to the drums. Id. The agents then opened the drums and discovered marijuana. Id., 773. The defendants, Santos Villarreal and Sergio Gonzalez, had made arrangements to have the drums picked up and delivered to them. Id. After the delivery, the defendants were arrested and charged with possession of the marijuana. Id. The defendants challenged the legality of the warrantless search, and the United States District Court concluded that the search had violated the fourth amendment. Id., 772.

On appeal, the government argued that the defendants had no reasonable expectation of privacy in the drums. Id. The United States Court of Appeals for the Fifth Circuit noted that "[t]he Supreme Court has long recognized that [l]etters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy. . . . Both senders and addressees of packages or other closed containers can reasonably expect that the government will not open them." (Citations omitted; internal quotation marks omitted.) Id., 774. The court further noted that it previously had "made clear that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names." Id.; see also *United States* v. *Pitts*, supra, 322 F.3d 459 (because person has right to use false name in sending and receiving mail in order to maintain privacy, expectation of privacy is reasonable). The court then determined that, although the evidence was somewhat ambiguous, it sup-

ported a finding that Roland Martin was the "alter ego" of either Villarreal or of Gonzalez, or both of them. *United States* v. *Villarreal*, supra, 963 F.2d 774. Accordingly, the court concluded that Villarreal and Gonzalez had a legitimate expectation of privacy in the drums; id., 775; and that the warrantless search was unconstitutional. Id., 777.

A number of courts—including the Fifth Circuit Court of Appeals—have concluded, however, that the intended recipient of an item that has been sent by mail or private freight carrier to *another actual person*, as opposed to a fictitious name, has *no* reasonable expectation of privacy in the item. See *United States* v. *Pierce*, 959 F.2d 1297, 1303 (5th Cir.) ("even if [the defendant] claimed that he was the intended recipient of the package, this would not confer a legitimate expectation of privacy, because it was addressed to, and received by, another"), cert. denied, 506 U.S. 1007, 113 S. Ct. 621, 121 L. Ed. 2d 554 (1992); *United States* v. *Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) (defendant who was neither sender nor addressee of package had no privacy interest in it); *United States* v. *Givens*, 733 F.2d 339, 342 (4th Cir. 1984) (rejecting argument that, "when A sends a package to B, the contents of which are ultimately intended for C . . . C is entitled to claim a privacy interest in the contents of the package"). In *Givens*, police had received information from a confidential informant that a shipment of drugs would be arriving on a particular flight into the Charleston, West Virginia airport. *United States* v. *Givens*, supra, 340. The police intercepted the package, which had been addressed to "Midwest Corporation . . . [Attention]: Debbie Starkes . . . ." (Internal quotation marks omitted.) Id. The police contacted the president of Midwest Corporation, who stated that he had authority to open any packages addressed to the company. Id. He then went to the airport accompanied by the police and opened

the package, which contained cocaine. Id. Thereafter, the defendant, Debbie Givens, signed for and picked up the package and was arrested. Id. When Givens challenged the constitutionality of the warrantless search, the United States District Court concluded that she had no legitimate expectation of privacy in the package. Id., 341. On appeal, the United States Court of Appeals for the Fourth Circuit agreed, reasoning that, because the addressee of a shipped item can control the use of and access to the item, the intended recipient can have no reasonable expectation that it will remain private. Id., 342.

In the present case, the defendant has not cited, and our research has not revealed, any authority for the proposition that a person has a reasonable expectation of privacy in a package shipped to another actual person. Indeed, the defendant has not asked this court to adopt such a rule. Rather, he appears to be asking this court to assume that "M. Patterson," the addressee on the boxes that were shipped by ABF, was his alias and to conclude, therefore, that the rule set forth in *Pierce*, *Koenig* and *Givens* is not applicable. The defendant presented no evidence at the suppression hearing, however, as to whether "M. Patterson" was the defendant's alias, in which case the rule in *Villarreal* and *Pitts* would be implicated, or, instead, whether "M. Patterson" was a real person, in which case the rule in *Pierce*, *Givens* and *Koenig* would be implicated.[14]

---

[14] As we previously have indicated, the defendant testified on cross-examination that he was not "M. Patterson." His testimony was ambiguous, however, as to whether he meant that "M. Patterson" was not his real name or whether he meant that "M. Patterson" was someone else. The trial court found that there was no evidence as to whether the person to whom the boxes had been addressed was a fictitious person, an alter ego for the defendant or a real third person.

At oral argument before this court, appellate counsel for the defendant represented that "M. Patterson" was a fictitious name used by the defendant. In reviewing the trial court's factual findings, however, we may consider only whether those findings were clearly erroneous in light of the evidence that was presented to it.

Accordingly, even if this court were to agree with the defendant, and with the courts in *Villarreal* and *Pitts*, that a person has a legitimate expectation of privacy in items that are shipped to that person by mail or private freight carrier under an alias, that would not help the defendant here. In order for this court to consider this principle, the burden was on the defendant to establish the factual predicate for his claim that "M. Patterson" was his alias. See *State* v. *Hill*, supra, 237 Conn. 93. He failed to do so. Accordingly, we conclude that the trial court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other justices concurred.